1  LAURA LEIGH GEIST (SBN 180826)
   laura.geist@dentons.com
2  ANDREW S. AZARMI (SBN 241407)
   andrew.azarmi@dentons.com
3  ANNE E. WADDELL (SBN 311388)
   anne.waddell@dentons.com
4
5  DENTONS US LLP
   1999 HARRISON STREET
6  SUITE 1300
   OAKLAND, CA 94612-4709
7  Telephone:    415 882 5000
   Facsimile:    415 882 0300
8
9  Attorneys for Defendant Apple Inc.

10                    UNITED STATES DISTRICT COURT

11                   NORTHERN DISTRICT OF CALIFORNIA

12                            SAN FRANCISCO

13

14  REBECCA TAYLOR, and C.T., a minor by          Case No. 3:20-CV-03906-RS
    REBECCA TAYLOR, C.T.,'s parent and
15  guardian, on behalf of themselves and all others   **APPLE INC.'S NOTICE OF
    similarly situated,                            MOTION AND MOTION TO
16                                                  DISMISS CLASS ACTION
                       Plaintiff,                   COMPLAINT; MEMORANDUM OF
17                                                  POINTS AND AUTHORITIES**
            v.
18                                                  Date:     October 1, 2020
    Apple Inc.,                                     Time:     1:30 p.m.
19                                                  Dept:     Courtroom 3, 17th Floor
                       Defendant.                   Judge:    The Hon. Judge Richard Seeborg
20
21                                                  Complaint filed: June 12, 2020
                                                    Trial Date:  None Set
22

23

24

25

26

27

28

DENTONS US LLP
1999 HARRISON STREET, SUITE 1300
OAKLAND, CALIFORNIA 94612
(415) 882-5000

1

## <u>TABLE OF CONTENTS</u>

I.    INTRODUCTION ...................................................................................................................1

II.   FACTS .................................................................................................................................4

      A.   The App Store Is A Marketplace Platform For Third-Party Developers' Apps............4

      B.   Apple And The App Store. ...........................................................................................5

      C.   Plaintiffs Do Not Make A Claim Based On Their Transaction With Apple. ...............7

III.  ARGUMENT .......................................................................................................................8

      A.   Apple's Marketplace Platform Is Protected From Liability Under Section 230
           of The Communication Decency Act For Content Created By Third Parties. .............9

      B.   Plaintiffs' UCL And CLRA Claims Fail As They Suffered No Economic
           Injury...........................................................................................................................11

      C.   Plaintiffs Fail To State A Claim Under the UCL or CLRA Because Each Of
           Their Borrowed Violations Fail As A Matter Of Law. ..............................................14

           1.   Games With Loot Boxes Do Not Constitute Illegal Gambling Slot
                Machines Under The California Penal Code. ...................................................15

                (a)   *Mason v. Machine Zone, Inc.*..............................................................17

                (b)   *Soto v. Sky Union, LLC*.......................................................................18

           2.   Plaintiffs' Other Borrowed Legal Violations Likewise Fail.............................19

                (a)   Federal Gambling Statutes...................................................................19

                (b)   Fraud. ....................................................................................................20

                (c)   Plaintiffs' CLRA Claim Fails As A UCL Predicate And As A
                      Standalone Claim...................................................................................22

      D.   Plaintiffs' UCL Unfair Prong Claim Fails Under All Three Tests. ...........................22

      E.   Plaintiffs' Unjust Enrichment Claim Fails Because It Is Not A Standalone
           Claim And, In Any Event, There Is No Legally Cognizable Misconduct...................24

      F.   Leave To Amend Should Be Denied. ..........................................................................25

IV.   CONCLUSION...................................................................................................................25

DENTONS US LLP
1999 HARRISON STREET, SUITE 1300
OAKLAND, CALIFORNIA 94612
(415) 882-5000

i

Case No. 3:20-CV-03906-RS
APPLE'S NOTICE OF MOTION AND MOTION TO DISMISS; MEMORANDUM
115374918

1

## **TABLE OF AUTHORITIES**

2

**Page(s)**

3

**Cases**

4

*Ascon Prop., Inc. v. Mobil Oil Co.*,
5
   866 F.2d 1149 (9th Cir. 1989) ................................................................................................. 25

6
*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009) .............................................................................................................. 8
7

*Backhaut v. Apple, Inc.*,
8
   74 F. Supp. 3d 1033 (N.D. Cal. 2014) ................................................................................. 22

9
*Barnes v. Yahoo! Inc.*,
   570 F.3d 1096 (9th Cir. 2009) ............................................................................................... 9
10

*Bayol v. Zipcar, Inc.*,
11
   78 F. Supp. 3d 1252 (N.D. Cal. 2012) ................................................................................. 15

12
*Bell Atl. Corp. v. Twombly*,
   550 U.S. 544 (2007) .............................................................................................................. 8
13

*Berry v. American Express Publishing, Inc.*,
14
   147 Cal. App. 4th 224 (2007) ............................................................................................... 23

15
*Branch v. Tunnell*,
   14 F.3d 449 (9th Cir. 1994) ................................................................................................... 8
16

*Carafano v. Metrosplash.com, Inc.*,
17
   339 F.3d 1119 (9th Cir. 2003) ............................................................................................... 9

18
*Chaset v. Fleer/Skybox Int'l, LP*,
   300 F.3d 1083 (9th Cir. 2002) ............................................................................................. 13
19

20
*Davis v. HSBC Bank Nevada, N.A.*,
   691 F.3d 1152 (9th Cir. 2012) ........................................................................................ 23, 24
21

*Doe v. Epic Games, Inc.*,
22
   435 F. Supp. 3d 1024 (N.D. Cal. 2020) ............................................................................... 23

23
*Doe v. Epic Games, Inc.*,
   N.D. Cal. Case No. 4:19-cv-03629-YGR ............................................................................ 19
24

25
*Durell v. Sharp Healthcare*,
   183 Cal. App. 4th 1350 (2010) ............................................................................................ 22
26

27

28

ii

Dentons US LLP
1999 Harrison Street, Suite 1300
Oakland, California 94612
(415) 882-5000

*Eller v. EquiTrust Life Ins. Co.*,
  778 F.3d 1089 (9th Cir. 2015) .................................................................................................21

*Engalla v. Permanente Medical Group, Inc.*,
  15 Cal. 4th 951 (1997) ..............................................................................................................22

*ESG Capital Partners, LP v. Stratos*,
  828 F.3d 1023 (9th Cir. 2016) .................................................................................................25

*Evans v. Hewlett-Packard Co.*,
  No. 13-02477 WHA, 2013 WL 5594717 (N.D. Cal. Oct. 10, 2013) ........................................11

*Federal Agency of News LLC v. Facebook Inc.*,
  432 F. Supp. 3d 1107 (N.D. Cal. 2020) ...................................................................................11

*I.B. ex rel. Fife v. Facebook, Inc.*,
  905 F. Supp. 2d 989 (N.D. Cal. 2012) .....................................................................................22

*Figy v. Amy's Kitchen, Inc.*,
  No. CV 13-03816 SI, 2013 WL 6169503 (N.D. Cal. Nov. 25, 2013) .......................................22

*Finster v. Keller*,
  18 Cal. App. 3d 836 (1971) ......................................................................................................16

*Foreman v. Bank of Am., N.A.*,
  401 F. Supp. 3d 914 (N.D. Cal. 2019) .......................................................................................8

*Free Kick Master LLC v. Apple Inc.*,
  140 F. Supp. 3d 975 (N.D. Cal. 2015) .....................................................................................10

*Fyk v. Facebook, Inc.*,
  808 Fed.App'x 597 (9th Cir. 2020) ..........................................................................................11

*Goddard v. Google*,
  640 F. Supp. 2d 1193 (N.D. Cal. 2009) ...................................................................................10

*Goddard v. Google, Inc.*,
  No. C 08-2738 JF (PVT), 2008 WL 5245490 (N.D. Cal. Dec. 17, 2008) ................................11

*Hinojos v. Kohl's Corp.*,
  718 F.3d 1098 (9th Cir. 2013) .............................................................................................3, 11

*Kearns v. Ford Motor Co.*,
  567 F.3d 1120 (9th Cir. 2008) ............................................................................................8, 21

*Kleidman v. U.S. Specialty Ins. Co.*,
  No. 5:14-CV-05158 HRL, 2015 WL 556409 (N.D. Cal. Feb. 10, 2015) ..................................14

DENTONS US LLP
1999 HARRISON STREET, SUITE 1300
OAKLAND, CALIFORNIA 94612
(415) 882-5000

iii

*Knievel v. ESPN*,
   393 F.3d 1068 (9th Cir. 2005) ..................................................................................... 8

*Kwikset Corp. v. Sup. Ct. (Benson)*,
   51 Cal. 4th 310 (2011) ............................................................................................... 11

*Lectrodryer v. SeoulBank*,
   77 Cal. App. 4th 723 (2000) ...................................................................................... 25

*Major League Baseball Props., Inc. v. Price*,
   105 F. Supp. 2d 46 (E.D.N.Y. 2000) ........................................................................ 14

*Mason v. Machine Zone, Inc.*,
   140 F. Supp. 3d 457 (D. Md. 2015) ..................................................................... *passim*

*Mason v. Machine Zone, Inc.*,
   851 F.3d 315 (4th Cir. 2017) ............................................................................. *passim*

*Mazza v. American Honda Motor Co.*,
   666 F.3d 581 (9th Cir. 2012) ....................................................................................... 7

*McBride v. Boughton*,
   123 Cal. App. 4th 379 (2004) .................................................................................... 25

*Meyer v. Sprint Spectrum L.P.*,
   45 Cal. 4th 634 (2009) ............................................................................................... 12

*N. Star Int'l v. Ariz. Corp. Com'n*,
   720 F.2d 578 (9th Cir. 1983) ....................................................................................... 8

*Opperman v. Path, Inc.*,
   87 F. Supp. 3d 1018 (N.D. Cal. 2014) ...................................................................... 10

*Palmer v. Apple Inc.*,
   No. 15-5808 RMW, 2016 WL 1535087 (N.D. Cal. Apr. 15, 2016) ........................... 24

*Price v. Pinnacle Brands, Inc.*
   138 F.3d 602 (5th Cir. 1998) ..................................................................................... 13

*R.A. v. Epic Games*,
   C.D. Cal. Case No. CV 19-1488-GW-Ex ................................................................. 19

*Reyes v. Atlantic Richfield Co.*,
   12 F.3d 1464 (9th Cir. 1993) ..................................................................................... 21

*Reyes-Aguilar v. Bank of Am., N.A.*,
   No. 13-cv-037640-JCS, 2014 WL 2153792 (N.D. Cal. Mar. 20, 2014) ...................... 8

DENTONS US LLP
1999 HARRISON STREET, SUITE 1300
OAKLAND, CALIFORNIA 94612
(415) 882-5000

iv

*Ristic v. Machine Zone, Inc.*,
    2016 WL 4987943 (N.D. Ill. 2016) (Ill. law) .................................................. 17, 19, 20

*San Miguel v. HP Inc.*,
    317 F. Supp. 3d 1075 (N.D. Cal. 2018) .................................................................. 24

*Sanders v. Apple Inc.*,
    No. C 08-1713, 2009 WL 150950 (N.D. Cal. Jan. 21, 2009) .................................. 25

*Skilstaf, Inc. v. CVS Caremark Corp.*,
    669 F.3d 1005 (9th Cir. 2012) .................................................................................. 8

*Sonner v. Premier Nutrition Corporation*,
    962 F.3d 1072 (9th Cir. 2020) ................................................................................ 25

*Soto v. Sky Union, LLC*,
    159 F. Supp. 3d 871 (N.D. Ill. 2016) ................................................... 3, 17, 18, 19

*State of California v. Iipay Nation of Santa Ysabel*,
    898 F.3d 960 (9th Cir. 2018) .................................................................................. 20

*Thrifty Payless, Inc. v. The Americana at Brand, LLC*,
    218 Cal. App. 4th 1230 (2013) ............................................................................... 22

*Trinkle v. Cal. State Lottery*,
    105 Cal. App. 4th 1401 (2003) ......................................................................... 15, 19

*U.S. v. E.C. Investments, Inc.*,
    77 F.3d 327 (9th Cir. 1996) .................................................................................... 20

*Vess v. Ciba-Geigy Corp. USA*,
    317 F.3d 1097 (9th Cir. 2003) .............................................................................. 8, 21

*Williams v. Facebook*,
    384 F. Supp. 3d 1043 (N.D. Cal. 2018) .................................................................. 25

*Wilson v. Hewlett-Packard Co.*,
    668 F.3d 1136 (9th Cir. 2012) ................................................................................. 14

**Statutes**

18 United States Code
    § 1955 ................................................................................................................. 14, 20
    § 1955(b)(1)(i) ........................................................................................................ 20

31 United States Code
    §§ 5361–5367 ..................................................................................................... 14, 20

DENTONS US LLP
1999 HARRISON STREET, SUITE 1300
OAKLAND, CALIFORNIA 94612
(415) 882-5000

v

47 United States Code
    § 230 ............................................................................................................................ *passim*
    § 230(c) ................................................................................................................................... 9
    § 230(f)(3) .............................................................................................................................. 11

California Business & Professions Code
    §§ 17200 *et seq.* ..................................................................................................................... 1

California Civil Code
    § 1671 ................................................................................................................................... 15
    § 1710 ............................................................................................................................. 14, 20
    § 1711 ............................................................................................................................. 14, 20
    §§ 1750 *et seq.* ....................................................................................................................... 1
    § 1770(a) ........................................................................................................................ 15, 22

California Penal Code
    § 330.1 .................................................................................................................... 14, 15, 16
    § 330.2 .................................................................................................................................. 17
    § 330a .............................................................................................................................. 14, 15
    § 330b ............................................................................................................................ *passim*
    § 330b(d) .............................................................................................................................. 15
    § 330b(f) ............................................................................................................................... 15

**Rules and Regulations**

Federal Rules of Civil Procedure
    Rule 9(b) ...................................................................................................................... 1, 8, 21
    Rule 12(b)(6) ..................................................................................................................... 1, 8

DENTONS US LLP
1999 HARRISON STREET, SUITE 1300
OAKLAND, CALIFORNIA 94612
(415) 882-5000

vi

DENTONS US LLP
1999 HARRISON STREET, SUITE 1300
OAKLAND, CALIFORNIA 94612
(415) 882-5000

### NOTICE OF MOTION AND MOTION

**TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:**

**PLEASE TAKE NOTICE** that at 1:30 p.m. on October 1, 2020, or as soon thereafter as the matter may be heard by the Court, in the courtroom of the Honorable Richard Seeborg, at 450 Golden Gate Avenue, San Francisco, CA 94102, Defendant Apple Inc. ("Apple") will and hereby does move for an order dismissing the Complaint of Plaintiff Rebecca Taylor and C.T., a minor on whose behalf Ms. Taylor brings suit (together, "Plaintiffs") under Rules 12(b)(6) and 9(b) of the Federal Rules of Civil Procedure.  This Motion is based on the Notice of Motion and Motion, the Memorandum of Points and Authorities, the Declaration of Andrew Azarmi, the Request for Judicial Notice with attached exhibits, the Court's files in this action, the arguments of counsel, and any other matter that the Court may properly consider.

### ISSUES TO BE DECIDED (LR 7-4(a)(3))

1.     Whether Plaintiffs' Complaint fails to state a claim because Apple is immune from liability under Section 230 of the Communications Decency Act.

2.     Whether Plaintiffs lack standing under California's Unfair Competition Law, Cal. Bus. & Profs. Code §§ 17200 *et seq.* ("UCL"), and Consumer Legal Remedies Act, Cal. Civ. Code §§ 1750 *et seq.* ("CLRA").

3.     Whether Plaintiffs fail to state a claim under the UCL's "unlawful" or "unfair" prongs.

4.     Whether Plaintiffs fail to state a claim under the CLRA.

5.     Whether Plaintiffs fail to state a cognizable claim for unjust enrichment.

### MEMORANDUM OF POINTS AND AUTHORITIES

## I.     INTRODUCTION

Apple's App Store is a marketplace platform where third-party developers distribute and share their creative and innovative apps with customers.  For the use of Apple's platform, app developers agree to pay Apple a commission for in-app sales.  Making this marketplace available ***is all Apple is alleged to have done here***—no more and no less.

1

DENTONS US LLP
1999 HARRISON STREET, SUITE 1300
OAKLAND, CALIFORNIA 94612
(415) 882-5000

Plaintiffs do not—as they cannot—allege that Apple creates the game apps, or critically, creates the features within the skill-based games that Plaintiffs challenge here.  Nor do Plaintiffs complain about anything related to their in-app purchase of virtual currency to use in the games they choose to play—***the only transaction Plaintiffs had with Apple***.  There are no claims that Apple misrepresented any aspect whatsoever of Plaintiffs' voluntary, in-app transactions.  And Plaintiffs received exactly what they paid for—virtual currency, offered by the game developer, to use as they wished within the game.

Plaintiffs instead spill 32 pages of ink trying to conjure blame against Apple for the content of games ***developed by third-party game developers***.  Yet, when you cut through the fog of Plaintiffs' allegations—which plainly seek to hold Apple liable for the conduct of game developers whom Plaintiffs have chosen not to pursue—it utterly fails as a matter of law.  No Court ever has found the "loot box" features in game apps unlawful, and for good reason.  The exact claims that Plaintiffs attempt here against Apple have failed when brought against the game developers that actually create the apps.  And they certainly fail here, where the only claim against Apple is that it provides the platform for those apps.

Section 230 of the Communications Decency Act ("CDA" or "Section 230") makes clear that Apple is not a permissible target of Plaintiffs' claims as a matter of law, since Plaintiffs concede that Apple does not itself develop the content of the games at issue here or any of the game features, including loot boxes.  The Complaint further fails as a matter of law for several equally fundamental reasons.  Plaintiffs have no standing to bring claims under either the UCL or the CLRA because they have not and cannot allege any conduct by Apple that caused them economic injury.  In this instance, Plaintiffs downloaded a game from the App Store for free, "Brawl Stars," which permits players to obtain virtual currency called "gems" through either in-app purchases or gameplay.  Plaintiffs acknowledge the in-app virtual currency purchase —***their only transaction with Apple***, and indeed their only purchase using real-world money—was voluntary and not necessary for gameplay.  They do not allege that these "gems" were anything other than what was bargained for, and importantly, do not base their legal claims against Apple on their only transaction with Apple.  The transaction that

DENTONS US LLP
1999 HARRISON STREET, SUITE 1300
OAKLAND, CALIFORNIA 94612
(415) 882-5000

1   Plaintiffs instead complain about is their ***in-game exchange*** of this virtual currency for loot boxes,

2   which contain randomized assortments of ***virtual*** items for use in gameplay.  The exchange of virtual

3   currency within a game for virtual items that can be used only within that game is not an economic

4   injury—these items have no secondary market value in the real world, and are not sufficient to confer

5   standing under the UCL or CLRA.  *Hinojos v. Kohl's Corp.*, 718 F.3d 1098, 1104 (9th Cir. 2013).

6       Plaintiffs' core UCL and CLRA claims also fail because Plaintiffs have not and cannot allege

7   any "unlawful" or "unfair" predicate.  In fact, Plaintiffs make ***no allegation that Apple's conduct is***

8   ***unlawful or unfair***.  Rather, Plaintiffs' claims rest on the flawed premise that the presence of loot

9   boxes in skill-based games developed by third-party developers, who publish their apps on the App

10  Store, is unlawful gambling.  No court has ever accepted such a theory, indeed all courts to consider

11  it have decisively rejected it: illegal gambling laws do not apply to apps that are predominately games

12  of skill.  *Mason v. Machine Zone, Inc.*, 140 F. Supp. 3d 457, 461-64 (D. Md. 2015) (Cal. law); *Soto v.*

13  *Sky Union, LLC*, 159 F. Supp. 3d 871, 878-81 (N.D. Ill. 2016) (Cal. law); *Mason v. Machine Zone,*

14  *Inc.*, 851 F.3d 315, 319 (4th Cir. 2017) (Md. law).  And they certainly do not apply to the platform

15  the apps sit on—here, Apple's App Store.  This Court should reach the same result.

16      Plaintiffs cannot isolate a single game element to transform skill-based games into

17  purportedly unlawful games of chance in an attempt to bootstrap a legal claim here.  Much like

18  putting "money" into the middle of the board for landing on the "Free Parking" spot injects an

19  element of chance into the game of Monopoly, loot boxes inject an optional element of chance into

20  games that are otherwise ***predominantly games of skill***.  There is nothing unlawful and certainly

21  nothing "unfair" about an optional and totally voluntary feature of a game.  And there is no support

22  for the theory that simply allowing these game apps on Apple's platform violates the law or is unfair.

23      Nor are the virtual items contained in loot boxes "things of value" within the meaning of the

24  Penal Code.  Plaintiffs do not even allege they bought a "loot box" from Apple.  They bought virtual

25  currency which could be used for various in-game purposes.  The inquiry begins and ends there.

26  Moreover, Plaintiffs used the virtual currency in game to purchase virtual items that have no real

27  world monetary value outside of gameplay.  These virtual items, whether it be the "skins" (*e.g.*,

28

3

clothes and outfits), characters or other virtual items obtained from "loot boxes," are made by developers to enhance enjoyment of their games.  Plaintiffs do not allege they exchanged any virtual item in a loot box for real world money or value.  They do not and cannot because selling or buying virtual items on a secondary market expressly violates both Apple's and, at least in the instance of Brawl Stars, the game developers' terms of service.  The CLRA claim fails for the same reason. Virtual currency used in gameplay is not a "good or service" as required for a claim under the CLRA.

Plaintiffs' unjust enrichment claim simply duplicates Plaintiffs' fatally flawed UCL and CLRA claims and is not otherwise cognizable under California law.

Plaintiffs' Complaint fails as a matter of law, and no amendment could plausibly cure its inherent and fundamental flaws.  It should be dismissed with prejudice.

## II.     FACTS

Plaintiffs' three claims under the UCL, CLRA and for unjust enrichment are entirely premised on the content of third-party developer games found on Apple's App Store.  The Complaint does not allege any conduct actually attributable to Apple as the basis of the claims.  Plaintiffs do not bring this action against the developers who actually created the allegedly offensive content (as those claims have failed in the courts) and instead improperly seek to hold Apple liable for the content of games it did not develop solely because they sit on the App Store platform.

### A.     The App Store Is A Marketplace Platform For Third-Party Developers' Apps.

In the more than 128 paragraphs of the Complaint, Plaintiffs fail to allege *any* affirmative representation by Apple relied upon by Plaintiffs.  Rather, as they must, Plaintiffs' concede Apple simply provides a platform for the game apps alleged.  Compl. ¶¶ 13, 15, 23–27, 44, 48, 55–57, 59, 82–86, 89.  In fact, while Plaintiffs allege minor C.T. was generally "induced" to "spend his money and his parent's money" to buy loot boxes (*id*. ¶16), they point to nothing whatsoever indicating any representations or other conduct by Apple constituting that inducement.  Instead, Plaintiffs admit that the alleged inducement occurred *during the course of gameplay and as part of the graphics provided by the game maker*.  *Id*. ¶¶ 17–18.

Dentons US LLP
1999 Harrison street, Suite 1300
Oakland, California 94612
(415) 882-5000

4

DENTONS US LLP
1999 HARRISON STREET, SUITE 1300
OAKLAND, CALIFORNIA 94612
(415) 882-5000

### B.      Apple And The App Store.

As Plaintiffs allege, the App Store is a virtual marketplace, through which Apple permits third-party software developers to make their applications available to consumers for download onto iOS devices, some of which are games.  Compl. ¶¶ 23–24.  Apple does not create or develop the games or any of the game features.  *Id*.  Rather, Apple hosts the App Store platform that publishes games, including those described in the Complaint, that are created and developed by third parties.  *Id*.  Most games available on the App Store, including each of those Plaintiffs reference, are downloaded for free with no payment to Apple or to the developer.  *Id.* (many games are "free, or very inexpensive to download.").  Thousands of games are available via the App Store, all with unique features, terms and conditions from their respective third-party developers.

Some developers offer games that permit in-app purchases, including purchases of virtual currency that can be used for gameplay (*e.g.*, to acquire a "clue" or game advantage).  *Id.* ¶¶ 44–46, 48–50, 56, 58–62.  It is not actual currency.  To the contrary, use of virtual currency is limited exclusively to a specific game, and to those items a game developer chooses to offer.  There is no allegation otherwise.  Plaintiffs here target one gameplay feature some developers allow players to acquire with their virtual currency, "loot boxes."  *Id.* ¶¶ 1, 13, 15, 23–24.  Loot boxes are "randomized chances within game[s] to obtain important or better weapons, costumes or player appearance (called 'skins'), or some other in-game item or feature that is designed to enhance game-play."  *Id*. ¶ 4.  Whether a game includes loot boxes, and how they work, varies by game—but often can be won by successful gameplay and thus acquired for free (as is the case with Brawl Stars), or alternatively can be acquired with in-game virtual currency.  *Id*. ¶ 61.[1]

Plaintiffs allege two distinct transactions: (1) the consumer purchases virtual currency with real-word money as an in-app purchase—this is the only transaction that involves Apple; and then (2) the consumer uses this virtual currency within the game to purchase a virtual item from the game's

---

[1] *See also, e.g.,* Apple's Request for Judicial Notice (RJN), Exs. B (Supercell Terms of Service (Supercell Terms) §§ 2.3, 4.1), G (Supercell Support: What are tokens?).

Case No. 3:20-CV-03906-RS
APPLE'S NOTICE OF MOTION AND MOTION TO DISMISS; MEMORANDUM
115374918

developer, such as a skin, upgrades or in some games, a loot box.  Compl. ¶¶ 13, 61.[2]  Absent from the Complaint is any claim based on the first transaction, with Apple.

Plaintiffs fail to allege any of the terms they agreed to before downloading the game or making the claimed in-app purchase on their Apple device.  Likely because they undermine Plaintiffs' claims.  RJN, Ex. A (Apple Media's Terms and Conditions (Apple Terms) § A).  While these facts are not necessary to Apple's Motion to Dismiss, they demonstrate the futility of any attempt to amend the Complaint.  For example, upon a customer's first purchase in the App Store, Apple asks how frequently it should ask for the consumer's password for future transactions, and allows the customer multiple methods to control access via Touch ID, Face ID and passwords.  RJN, Ex. A (Apple Terms § B).  Consumers can change these preferences at any time, including the option to turn off in-app purchasing completely, and are informed that they cannot transfer in-app purchases (such as virtual currency or other virtual items they may have acquired) to other devices.  *Id.*, Ex. A (Apple Terms § G).  As an additional control feature for those families whose minors have their own iPhone or iPad, Apple has a "Family Sharing" option which allows the legal guardian to always require their permission before any purchase is made.  *Id.*, Ex. A (Apple Terms § D).  And before a consumer is able to use the in-app purchase feature to buy virtual currency for gameplay, they must agree to the game developer's terms—also not alleged.  As here, to make an in-app purchase within the game "Brawl Stars," the consumer is required to agree to Supercell's terms of service.  *Id.*, Exs. B (Supercell Terms § 1), A (Apple Terms § G).  Supercell's Parent's Guide informs parents about in-app purchases, price ranges and how to disable them.  *Id.*, Ex. F (Supercell Parent's Guide).  This is true of the three other games Plaintiffs reference—Mario Kart Tour by Nintendo, FIFA Soccer by Electronic Arts, and Roblox by Roblox Corporation.  *Id.*, Exs. J (Nintendo Mario Kart Tour:

---

[2] Certain paragraphs of Plaintiffs' Complaint suggest that loot boxes can be purchased directly for real world currency.  Compl. ¶¶ 31, 32.  Whether or not true, Plaintiffs make clear that this is not the case for the referenced games and that their transaction was two steps, as described herein.  *Id.* ¶ 62.

Case No. 3:20-CV-03906-RS
APPLE'S NOTICE OF MOTION AND MOTION TO DISMISS; MEMORANDUM
115374918

DENTONS US LLP
1999 HARRISON STREET, SUITE 1300
OAKLAND, CALIFORNIA 94612
(415) 882-5000

Information for Parents), H (Electronic Arts: How to turn off in-game purchasing), I (Roblox:

Parents, Safety and Moderation).[3]

### C.   Plaintiffs Do Not Make A Claim Based On Their Transaction With Apple.

Plaintiff C.T. allegedly spent a $25 gift card to make an in-app purchase of virtual currency,

here "gems," which he then used in the game Brawl Stars to acquire a "Brawl Box." Compl. ¶¶ 17,

61.   There is no claim based on the transaction with Apple to purchase the gems.

Instead, Plaintiffs' claim concerns his use of a virtual currency, "gems," within the game

Brawl Stars.  *Id.* ¶ 61.  Gems can be earned by gameplay or purchased.  *Id.* ¶ 61.  But the only time

the player ever engages in a transaction involving Apple is when they decide to make optional

purchase of gems, rather than earn tokens through gameplay.  *See id.* ¶¶ 34–35, 45, 50, 58, 61.

Whether virtual currency is acquired by earning tokens, or purchased as gems, either form may be

used in the game to obtain various virtual items, such as "token-doublers," better skins or outfits, or

Brawl Boxes.  *Id.*[4]  Once purchased, the virtual currency ***cannot*** be refunded or exchanged for real

money within the game itself or through Apple.  *Id.* ¶6.[5]

Here, Plaintiffs allege the "loss" of virtual currency within the game Brawl Stars.  *Id.* ¶¶ 14–

17, 61–62.   But, the use of virtual currency within a game cannot support a claim for economic loss

---

[3]  The terms for each developer and game differ significantly.  RJN, Exs. B (Supercell Terms), D
(Nintendo User Agreement (Nintendo Terms)), C (Electronic Art Applicant End User License
Agreement (EA Terms)), E (Roblox Terms of Use (Roblox Terms)).  For example, Nintendo's terms
for Mario Kart include a choice of law provision applying Washington law, whereas Apple's terms
and Supercell's terms (developer of Brawl Stars, cited in the Complaint) include choice of law
provisions applying California law.  One of many reasons it is hard to conceive of how Plaintiffs'
claims could ever be certified as a class.  *See Mazza v. American Honda Motor Co.,* 666 F.3d 581,
590–91 (9th Cir. 2012) (decertifying class on predominance grounds where different states' consumer
protection statutes applied to different consumers' claims).  Likewise, arbitration clauses and class
action waivers are present in some game developers' terms but not others—here three of the
developers cited by Plaintiffs in the Complaint (Nintendo, Electronic Arts, and Roblox) have such
clauses; whereas Supercell does not.

[4] *See also* RJN, Ex. G (Supercell Support: What are tokens?; What are gems?).

[5]  Again, while Plaintiffs conclusory allege this fact, the actual facts are found in Apple's Terms and
Conditions which expressly prohibit such transactions.  RJN, Ex. A (Apple Terms § G).   The same is
true of the Terms of Service for Supercell.  *Id.*, Ex. B (Supercell Terms §§ 1.1, 4.1).

DENTONS US LLP
1999 HARRISON STREET, SUITE 1300
OAKLAND, CALIFORNIA 94612
(415) 882-5000

7

1   against the game developer; and is not resurrected by then attempting to bring it against the

2   marketplace platform provided by Apple—who is a step once removed.

3   **III.**   **ARGUMENT**

4   Plaintiffs' Complaint does not and cannot allege a claim against Apple for the content of

5   third-party developers' games, including the optional loot box features.  "The purpose of a motion to

6   dismiss under Rule 12(b)(6) is to test the legal sufficiency of the complaint."  *N. Star Int'l v. Ariz.*

7   *Corp. Com'n*, 720 F.2d 578, 581 (9th Cir. 1983).  To withstand such a motion, a complaint must

8   plausibly allege facts supporting a claim for which relief may be granted.  *Bell Atl. Corp. v. Twombly*,

9   550 U.S. 544, 555 (2007); *Ashcroft v. Iqbal*, 556 U.S. 662, 663 (2009).  The Court may disregard

10   allegations that contradict judicially-noticed facts or facts contained in documents referenced in the

11   complaint.  *Skilstaf, Inc. v. CVS Caremark Corp.*, 669 F.3d 1005, 1016 n.9 (9th Cir. 2012).  If the

12   complaint cites documents but does not attach them, the "incorporation by reference" doctrine allows

13   the court to look beyond the pleadings without converting the 12(b)(6) motion into a motion for

14   summary judgment.  *Knievel v. ESPN*, 393 F.3d 1068, 1076-77 (9th Cir. 2005).  Where such

15   documents do not in fact support plaintiff's claim, the complaint may be dismissed for failure to state

16   a claim.  *Branch v. Tunnell*, 14 F.3d 449, 454 (9th Cir. 1994), *overruled on other grounds in*

17   *Galbraith v. County of Santa Clara*, 307 F.3d 1119, 1127 (9th Cir. 2002).  In addition, Fed. R. Civ. P.

18   Rule 9(b) applies to claims grounded in fraud.  *See Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1125

19   (9th Cir. 2008).  Dismissal is appropriate where Plaintiffs fail to allege "the who, what, when, where

20   and how" of any allegedly false representations.  *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097,

21   1106 (9th Cir. 2003).  Dismissal with prejudice follows when a complaint's core theories of liability

22   are precluded by "question[s] of law that amendment cannot cure."  *Foreman v. Bank of Am., N.A.*,

23   401 F. Supp. 3d 914, 924 (N.D. Cal. 2019); *see also Reyes-Aguilar v. Bank of Am., N.A.*, No. 13-cv-

24   037640-JCS, 2014 WL 2153792, at *10 (N.D. Cal. Mar. 20, 2014) (dismissing with prejudice claim

25   that relied on "fatally flawed" theory).  Here, Plaintiffs' Complaint should be dismissed with

26   prejudice because Plaintiffs' claims are fatally flawed and cannot be saved by creative amendment.

27

28

DENTONS US LLP
1999 HARRISON STREET, SUITE 1300
OAKLAND, CALIFORNIA 94612
(415) 882-5000

8

**A.      Apple's Marketplace Platform Is Protected From Liability Under Section 230 Of The Communication Decency Act For Content Created By Third Parties.**

Plaintiffs improperly seek to hold Apple liable for providing third-party developers a platform for their game apps—conduct that is squarely protected under Communications Decency Act sections 230(c)(1) and (c)(2).

The Ninth Circuit has found that Section 230 protects from liability: (1) a provider or user of an interactive computer service; (2) whom a plaintiff seeks to treat, under a state law cause of action, as a publisher or speaker; (3) of information provided by another information content provider." *Barnes v. Yahoo! Inc.,* 570 F.3d 1096, 1100–01 (9th Cir. 2009).[6]  Courts apply Section 230 liberally to dismiss claims at the pleading stage where, like here, they are brought against interactive computer service providers for alleged conduct that is outside of the provider's role as a "publisher" of third-party content.  *Id.* at 1100.  In fact, under established law in this Circuit, Section 230 broadly protects platforms like the App Store with only narrow exceptions for circumstances where, unlike here, the defendant's conduct goes beyond the traditional editorial functions of a publisher.  *See Carafano v. Metrosplash.com, Inc.*, 339 F.3d 1119, 1123–24 (9th Cir. 2003) (agreeing with the "consensus developing across other courts of appeal that [the CDA] provides broad immunity for publishing content provided primarily by third parties" and that its goals are furthered by providing broad immunity for platforms that do not play a role in creating the hosted third-party content).

Courts have specifically observed that the App Store falls within the CDA's protection.  In *Opperman v. Path, Inc.*, 87 F. Supp. 3d 1018, 1044 n.12 (N.D. Cal. 2014), for example, it was stated:

---

[6] Section 230(c), 47 U.S.C. § 230, specifically states:
(1) **Treatment of Publisher or Speaker.** No provider or user of an interactive computer service shall be treated as the publisher or speaker of any information provided by another information content provider;
(2) **Civil liability.**  No provider or user of an interactive computer service shall be held liable on account of—(A) any action voluntarily taken in good faith to restrict access to or availability of material that the provider or user considers to be obscene, lewd, lascivious, filthy, excessively violent, harassing, or otherwise objectionable, whether or not such material is constitutionally protected; or (B) any action taken to enable or make available to information content providers or others the technical means to restrict access to material described in paragraph (1).

Case No. 3:20-CV-03906-RS
APPLE'S NOTICE OF MOTION AND MOTION TO DISMISS; MEMORANDUM
115374918

DENTONS US LLP
1999 HARRISON STREET, SUITE 1300
OAKLAND, CALIFORNIA 94612
(415) 882-5000

1

2

3

4

5

> Plaintiffs' assertion that Apple "provides third-party developers with review guidelines, and conducts a review of all applications submitted for inclusion in the App Store for complaint with these documents," [ ], is identical to an allegation regarding the app distributor in *Evans*, which that court found insufficient to support the plaintiffs' claim that the distributor was also a co-creator. *See Evans*, 2013 WL 5594717, at *4 ("plaintiffs allege that defendants '[m]andated specific "Application Content Criteria" for all content of the app,' '[m]andated "App Naming Guidelines" for the App,' and '[m]andated technical criteria for the App'").

6

7

8

9

> Apple's role as an app publisher, including its promulgation of review guidelines, its review of all apps submitted to the App Store, and its enforcement of its guidelines, is fundamental "publisher" activity protected by the CDA. Plaintiffs' allegations that Apple has failed to remove offending apps from the App Store, [ ], and that it encourages consumers to download third-party apps and advertises third-party apps in order to sell its devices are similarly subject to the CDA's protections.

10   87 F. Supp. 3d at 1044 n.12. Although the CDA was not applicable in *Opperman* based on plaintiff's

11   allegations outside of the apps at issue in the case, the core principle applies.

12       Operators of virtual marketplaces that publish apps for download, like Apple's App Store, are

13   routinely protected by the CDA from liability for app-related claims related to the app's content.

14   *E.g., Free Kick Master LLC v. Apple Inc.,* 140 F. Supp. 3d 975, 981, 983 (N.D. Cal. 2015) (Google

15   immune under Section 230 for state law claims related to third-party app offered through its app

16   store) (collecting cases); *Goddard v. Google*, 640 F. Supp. 2d 1193, 1196 (N.D. Cal. 2009) (where

17   platform merely provides third parties with neutral tools to create content, even if the third parties are

18   using such tools to create illegal content, the platform is immune under the CDA).

19       Here, Plaintiffs seek to hold Apple liable precisely for the ***content*** of games created by third-

20   party game developers. *See* Compl. ¶¶ 26, 44, 48, 56, 59, 86. Plaintiffs concede that Apple functions

21   as a "publisher" under the CDA, acknowledging that all of the games alleged were developed entirely

22   by third parties. *Id.* "Apple places the developers' apps on the virtual shelves of its App Store"

23   which is the "platform" function for Apple. *Id.* ¶ 26. Plaintiffs do not and cannot contest that third-

24   party developers are responsible "for the development of information provided," and thus are the only

25   "information content providers" of the loot boxes at issue in their Complaint. 47 U.S.C. § 230(f)(3).

26   Nor does Apple's requirement that developers disclose the odds of obtaining an item in loot boxes

27   mean that Apple somehow is supplying "content." *See Goddard v. Google, Inc.*, No. C 08-2738 JF

D<small>ENTONS</small> US LLP
1999 H<small>ARRISON</small> S<small>TREET</small>, S<small>UITE</small> 1300
O<small>AKLAND</small>, C<small>ALIFORNIA</small> 94612
(415) 882-5000

28

10

1  (PVT), 2008 WL 5245490, at *5 (N.D. Cal. Dec. 17, 2008) (requirement that advertisers agree to

2  provide certain disclosures does not make Google responsible for the content the advertisers create).

3        Plaintiffs do not rescue their Complaint from CDA immunity by asserting Apple obtains

4  revenue from in-app purchases—here, the opportunity to purchase "gems" or other virtual currency

5  which in turn is used in-game to obtain "loot boxes."  Obtaining revenue does not transform a

6  platform provider into a content provider.  *E.g., Fyk v. Facebook, Inc.*, 808 Fed.App'x 597, 598 (9th

7  Cir. 2020) ("That Facebook allegedly took its actions for monetary purposes does not somehow

8  transform Facebook into a content developer."); *Evans v. Hewlett-Packard Co.*, No. 13-02477 WHA,

9  2013 WL 5594717, at *1, *4 (N.D. Cal. Oct. 10, 2013) (plaintiff cannot avoid Section 230 immunity

10  by alleging defendant "maintained primary control" over revenues or obtained commissions from app

11  sales or that it provided technical requirements for app developers.)  Apple's alleged profit from in-

12  app purchases is irrelevant to the CDA inquiry as there is no "for-profit" exception to Section 230's

13  broad grant of immunity.  *See Federal Agency of News LLC v. Facebook Inc.,* 432 F. Supp. 3d 1107,

14  1119 (N.D. Cal. 2020) ("The 'fact that a website elicits online content for profit is immaterial,' the

15  only relevant inquiry is whether the service provider 'creates' or 'develops' that content.'").

16        Here, there is no allegation Apple creates any of the alleged content in the games, including

17  the loot boxes. The App Store operates solely as a platform for publication of the game played by

18  Plaintiffs.  Apple is protected from liability under Section 230.

19      **B.**    **Plaintiffs' UCL And CLRA Claims Fail As They Suffered No Economic Injury.**

20        Just as fundamentally, Plaintiffs' UCL and CLRA claims fail because they have no alleged

21  economic injury.  California law is clear that UCL standing requires the plaintiff suffer "economic

22  injury."  *Kwikset Corp. v. Sup. Ct. (Benson)*, 51 Cal. 4th 310, 322–23 (2011); *Hinojos v. Kohl's*

23  *Corp.*, 718 F.3d 1098, 1104 (9th Cir. 2013).  The same is true of the CLRA.  *See Meyer v. Sprint*

24  *Spectrum L.P.*, 45 Cal. 4th 634, 640 (2009).

25        Plaintiffs' ***only*** alleged transaction with Apple was the purchase of virtual currency, "gems."

26  This is where Plaintiffs' interaction with Apple begins and ends.  How Plaintiffs use the virtual

27  currency is an action within the game and away from Apple.  Plaintiffs do not allege they suffered

28

DENTONS US LLP
1999 HARRISON STREET, SUITE 1300
OAKLAND, CALIFORNIA 94612
(415) 882-5000

11

any economic injury from their transaction with Apple because they got **exactly** what they paid for—

virtual "gems"—which they were entitled to use within the game however they liked.

In *Mason v. Machine Zone, Inc.*, 140 F. Supp. 3d at 461-64 (California law), considering this

exact issue, the court dismissed plaintiff's UCL claims brought against the game developer.  The

court held that the game did not constitute an unlawful "slot machine or device" under California

Penal Code section 330b, even though it offered in-app purchases of virtual currency to use on loot

boxes.  *Mason* not only eviscerates the Penal Code predicate to Plaintiffs' UCL and CLRA claims,

but foundationally establishes that Plaintiffs lack standing as the subsequent use of virtual currency

on loot boxes or any other virtual item is not economic injury:

> Plaintiff argues that there is "no question that [she] suffered an economic injury by
> wagering in the Casino" because she "lost $100 between early 2014 and January
> 2015," typically "$0.60 per spin." (ECF No. 18 at 18.) But of course Plaintiff was
> not wagering with *dollars*; she was playing with *virtual gold*. Plaintiff acquired
> that "gold" in the "gold store," where she exchanged her real-world currency for a
> nontransferable, revocable license to use virtual currency for entertainment
> purposes. (ECF No. 1–2 at 9.) At the moment of that antecedent transaction,
> Plaintiff's "loss," if any, was complete: then and there she had swapped something
> of value (real money) for something of whimsy (pretend "gold").
>
> Plaintiff could spend her "gold" as she pleased within the bounds of Defendant's
> [Terms of Service]: she could acquire resources to "hasten [her] advancement in
> the game" (ECF No. 1 ¶ 2), or she could exchange her "gold" for chips to spin the
> Casino wheel [the game's loot box] (*id.* ¶ 21). What she could *not* do is cash out of
> the game.

*Id.* at 465-66 (emphasis original).

The Fourth Circuit likewise recognized that spending virtual currency within a game (*Game

of War*) is not an "economic loss." *Mason v. Machine Zone, Inc.*, 851 F.3d 315, 319 (4th Cir. 2017)

(interpreting Maryland law).  The court cast aside plaintiff's argument that because game players

could sell their accounts in a secondary market, "money" was somehow at stake.  The court observed

that virtual currency itself was not even the subject of such a theoretical sale, but rather a player's

whole account including, importantly, the level of advancement through skill; and further, like here,

plaintiff made no allegation that she ever tried to sell her account or any virtual items on a secondary

market.  Nor could she as any sale was expressly precluded by Machine Zone's terms of service.  *Id.*

DENTONS US LLP
1999 HARRISON STREET, SUITE 1300
OAKLAND, CALIFORNIA 94612
(415) 882-5000

at 320.  The logic in *Mason* applies with full force here.  Plaintiffs' only transaction with Apple was when they paid real-world money in-app for virtual currency, to subsequently use within the game as they pleased.  The virtual currency is for gameplay only and can never be refunded or otherwise exchanged for real money within the game itself or through Apple.  *See* Compl. ¶ 6.[7]  The virtual items acquired in the game cannot be used or sold outside of the game.  *Id.*

Parallels can be drawn to baseball cards and other trading cards like Pokémon cards, where "the purchasers alleged that the random inclusion of limited edition cards in packages of otherwise randomly assorted sports and entertainment trading cards constituted unlawful gambling in violation of RICO."  *Chaset v. Fleer/Skybox Int'l, LP*, 300 F.3d 1083, 1086 (9th Cir. 2002).  Trading cards share some similarities with loot boxes, in that they offer randomized chances to obtain rare or more desirable cards.  Nearly uniformly these cases are dismissed for failure to state a claim as there is no economic injury.  Plaintiffs received what they bought—a pack of cards.  Whether the cards within that pack had any value (real life or otherwise) is of no consequence.  *E.g.*, *id.* at 1087-88 ("Purchasers of trading cards do not suffer an injury cognizable under RICO when they do not receive an insert card. At the time the plaintiffs purchased the package of cards, which is the time the value of the package should be determined, they received value—eight or ten cards, one of which might be an insert card—for what they paid as a purchase price. Their disappointment upon not finding an insert card in the package is not an injury to property.");  *Price v. Pinnacle Brands, Inc.* 138 F.3d 602, 607 (5th Cir. 1998) ("We agree with the district court that '[p]laintiffs do not allege that they received something different than precisely what they bargained for: six to twenty cards in a pack with a chance that one of those cards may be of Ken Griffey, Jr.'");  *Major League Baseball Props., Inc. v. Price*, 105 F. Supp. 2d 46, 51 (E.D.NY. 2000) ("A card purchaser buying a pack of cards enters into a bargain with the licensors and manufacturers whereby in return for payment the purchaser will receive a random assortment of regular cards and a chance to receive an insert card.

---

[7] Any attempt to amend this allegation would be futile because Plaintiffs concede this ultimate fact, as they must.  *See* RJN, Exs. A (Apple Terms § G), B (Supercell Terms §§ 1.1, 4.1, 4.2).

Case No. 3:20-CV-03906-RS
APPLE'S NOTICE OF MOTION AND MOTION TO DISMISS; MEMORANDUM
115374918

DENTONS US LLP
1999 HARRISON STREET, SUITE 1300
OAKLAND, CALIFORNIA 94612
(415) 882-5000

1   This bargain delivers actual value to each party because the chance itself is of value regardless of

2   whether or not the card purchaser later suffers a 'loss.' The bargain is not for a phantom chance.").

3        Here, Plaintiffs received what they bargained for—virtual currency gems— for use in the

4   game. The use of that virtual currency within the game or the "value" of any item obtained in a loot

5   box purchased with virtual currency is not a real-world economic loss and does not confer Plaintiffs

6   standing under the UCL and CLRA. In addition, Plaintiffs do not and cannot sufficiently allege

7   causation, which further undermines their claims. Apple did not offer loot boxes to Plaintiffs, nor did

8   it create these game developer items. Even if there were any purported injury it cannot plausibly and

9   is not alleged to be tied to any conduct of Apple.

10       **C.    Plaintiffs Fail To State A Claim Under The UCL Or CLRA Because Each Of
             Their Borrowed Violations Fail As A Matter Of Law.**

11       Plaintiffs' UCL unlawful claim and their CLRA claim both rest on the failed premise that loot

12   boxes within a game transform the games into unlawful slot machines under the California Penal

13   Code. They do not. To establish a claim under the UCL's unlawful prong, a plaintiff "borrows

14   violations of other laws and treats them as unlawful practices that the unfair competition law makes

15   independently actionable." *Wilson v. Hewlett-Packard Co.*, 668 F.3d 1136, 1140 (9th Cir. 2012). If

16   there is no claim under the predicate act, the claim fails as a matter of law. *Kleidman v. U.S.*

17   *Specialty Ins. Co.*, No. 5:14-CV-05158 HRL, 2015 WL 556409, at *2 (N.D. Cal. Feb. 10, 2015).

18       Plaintiffs predicate their UCL unlawful claim on alleged violations of: (1) California Penal

19   Code sections 330a, 330b and 330.1 (Compl. ¶¶ 7, 88, 96, 103-105); (2) The Illegal Gambling

20   Business Act, 18 U.S.C. § 1955 (Compl. ¶¶ 96, 104, 105); (3) The Unlawful Internet Gambling

21   Enforcement Act of 2006, 31 U.S.C. §§ 5361–5367 (Compl. ¶¶ 96, 104, 105); (4) California's

22   codified common law fraud , Cal. Civ. Code, §§ 1710, 1711 (Compl. ¶¶ 103, 106); and (5) The

23   Consumer Legal Remedies Act, Cal. Civ. Code, § 1770(a)(14)) (Compl. ¶¶ 96, 103, 106, 112–

24   124).[8] Each fail as a matter of law.

25

26   _____

27   [8] The sole CLRA provision alleged in the Complaint, Cal. Civ. Code § 1770(a)(14), prohibits
     "representing that a transaction confers or involves rights, remedies, or obligations that it does not

28

Case No. 3:20-CV-03906-RS
APPLE'S NOTICE OF MOTION AND MOTION TO DISMISS; MEMORANDUM
115374918

DENTONS US LLP
1999 HARRISON STREET, SUITE 1300
OAKLAND, CALIFORNIA 94612
(415) 882-5000

1

### 1.  Games With Loot Boxes Do Not Constitute Illegal Gambling Slot Machines Under The California Penal Code.

The gravamen of Plaintiffs' Complaint—that any game downloaded from the App Store which contains a loot box is transformed into an illegal slot machine under California Penal Code sections 330a, 330b and 330.1—fails.

California Penal Code section 330b(d) defines a "slot machine or device" as: (1) a "machine, apparatus, or device" activated by "the insertion of money or [some] other object"; (2) "the operation of the machine [must be] unpredictable and governed by chance"; and (3) "by reason of the chance operation of the machine, the user may become entitled to receive a thing of value." *Trinkle v. Cal. State Lottery*, 105 Cal. App. 4th 1401, 1410 (2003).[9] Section 330b(f) narrows this definition, expressly carving out games of mostly skill: "Pinball and other ***amusement machines or devices, which are predominantly games of skill***, whether affording the opportunity of additional chances or free plays or not, are ***not included within the term slot machine or device***, as defined in this section" (emphasis added).

Plaintiffs cannot show a Penal Code violation for two independent, dispositive reasons. ***First,*** Plaintiffs do not and cannot plausibly allege the game apps are "slot machines." The question is not whether there is any element of chance, as Plaintiffs misdirect. Rather, the question is whether the game played on the device is one predominately of skill or simply a game of chance.

There can be no serious question that the games at issue here are predominantly games of skill. Plaintiffs themselves concede that loot boxes are an entirely voluntary feature of these games which can be ignored or affirmatively de-selected, with ***zero*** impact on gameplay. This point is aptly

---

have or involve, or ***that are prohibited by law***" (emphasis added). As with the UCL, if there is no violation of the predicate act, there is no CLRA claim. *Cf. Bayol v. Zipcar, Inc.*, 78 F. Supp. 3d 1252, 1260–61 (N.D. Cal. 2012) (addressing California Civil Code section 1671 as a CLRA predicate).

[9] The Complaint also cites to Penal Code sections 330a and 330.1. Sections 330a, 330b and 330.1 contain distinct but overlapping provisions that prohibit "slot machine[s] or device[s]" as defined in each section. *See generally Trinkle v. California State Lottery*, 105 Cal. App. 4th 1401, 1409–10 (2003) (treating §§ 330b & 330.1 as identical). As Plaintiffs cannot establish the slot machine element, Plaintiffs' claims fail under all three sections.

DENTONS US LLP
1999 HARRISON STREET, SUITE 1300
OAKLAND, CALIFORNIA 94612
(415) 882-5000

15

DENTONS US LLP
1999 HARRISON STREET, SUITE 1300
OAKLAND, CALIFORNIA 94612
(415) 882-5000

illustrated by Brawl Stars, the only game in which Plaintiffs used virtual currency to buy a loot box. "Brawl Boxes" are but one component of the game, and but one use to which a player's virtual currency (bought or earned gems or tokens) can be put.  Compl. ¶¶ 61–63.[10]  The game advances through skilled gameplay—players "brawl" against other players and earn tokens from success in brawling and the difficulty level of their opponent.  *Id.*  At various points in the game, players have the option of using any virtual currency they secure to acquire virtual items, including Brawl Boxes. *Id.*  Because Brawl Box contents are randomized, they inject an element of chance (what virtual item the player receives) into the game.  *Id.* ¶63.  But this optional feature—to use virtual currency and inject a randomized new item into the game—does not make it a pure game of chance any more than the roll of dice in the game of Risk makes it a pure game of chance.  As games of skill, Brawl Stars and games like it fall squarely outside the Penal Code's definition of a "slot machine."[11]

**Second,** and independently, Plaintiffs cannot show loot boxes offered them a legitimate chance to win a "thing of value."  While the virtual items in loot boxes may have value to the game-player (like Free Parking windfall in Monopoly), skins or game characters like Brawlers are not "things of value" within the Penal Code because they do not have real-world monetary value outside the game.  While Plaintiffs allege some undefined "gray" secondary market—they fail to allege they acted on this secondary market.  Compl. ¶6.  For good reason.  It would be against the terms of the App Store and the game developer.[12]  *See* Cal. Pen. Code § 330.2 ("a 'thing of value' is defined to be any money, coin, currency, check, chip, allowance, token, credit, merchandise, property, or any

---

[10] *See also* RJN Ex. G (Supercell Support: What are tokens?; What are gems?).

[11] *See, e.g., Finster v. Keller,* 18 Cal. App. 3d 836, 844 (1971) ("In a game of skill, fairly played among competitors, such as bridge, the participants continue to make their individual judgments until the hand has been played. In that sense they exercise some control over the outcome."); *quoting In re Allen,* 59 Cal. 2d 5, 7 (1962) ("[I]t is obvious that, although there is of course an element of chance resulting from the deal of the cards, there is a continually recurring necessity in the bidding and play of the hand to make decisions which, considered together, will ordinarily be determinative of the outcome of the game.").

[12] *See* RJN, Exs. A (Apple Terms § G), B (Supercell Terms §§ 1.1, 4.1). Indeed, playing with bought or sold game accounts constitutes grounds for a player's expulsion from the App Store and Brawl Stars. *Id.*, Exs. A (Apple Terms §§ G, K), B (Supercell Terms § 1.2).

Case No. 3:20-CV-03906-RS
APPLE'S NOTICE OF MOTION AND MOTION TO DISMISS; MEMORANDUM
115374918

1    representative of value.")  Plaintiffs' Penal Code predicates fail under their express language.  And

2    every court to address this claim is in accord.  *See Mason*, 140 F. Supp. 3d at 461-64 (Cal. law); *Soto*,

3    159 F. Supp. 3d at 878-81 (Cal. law); *Mason*, 851 F.3d at 319 (Md. law); *Ristic v. Machine Zone*,

4    *Inc.,* 2016 WL 4987943, at *4 (N.D. Ill. 2016) (Ill. law).

5                        **(a)      *Mason v. Machine Zone, Inc.***

6           In *Mason*, 140 F. Supp. 3d at 461–64, a case specifically regarding loot boxes under the Penal

7    Code, the court dismissed the UCL claims asserted against the game developer concluding that the

8    free-to-play mobile game did not constitute an unlawful "slot machine or device" under California

9    Penal Code section 330b, even though it offered in-app purchases of virtual currency and

10   incorporated for-purchase loot boxes.  *Id.*

11          Just as in Brawl Stars played by Plaintiffs, *Game of War: Fire Age*, was a free-to-play mobile

12   game available for downloading from the App Store.  *Mason*, 140 F. Supp. 3d at 460.  It too offered

13   in-app acquisition of virtual currency called "gold," which could be spent at the in-game "casino" to

14   wager on a randomized "virtual spinning wheel" where, "[a]fter each spin, players receive a virtual

15   prize ranging from an in-game 'resource' such as 'wood' or 'stone' (useful elsewhere in the game) to

16   additional chips or 'gold.'"  *Id.*  As here, plaintiff alleged "that players are more likely to win 'basic

17   items' (*e.g.,* 'wood') than valuable ones (*e.g.,* 'gold')."  *Id.*  And like here, the plaintiff alleged that

18   "players have created secondary markets to buy and sell *Game of War* accounts" for real money.  *Id.*

19   Plaintiff also asserted violation of California Penal Code section 330b as the predicate for a UCL

20   unlawful-prong claim.  *Id.* at 461.

21          The *Mason* court soundly rejected Plaintiffs' theories.  After first finding that game software

22   was not a "machine, apparatus, or device" within the meaning of the Penal Code, *Mason* went on to

23   rule that the game's randomized "casino" function did not violate Section 330b because the "casino"

24   loot box function in *Game of War* did not transform it into a game of chance:

25          The game at issue here is not "Casino"; the game is *GoW*. Plaintiff proffers no
             authority for the proposition that the Court may excise one particular aspect of an
26           integrated strategy game and evaluate that aspect in isolation. On the contrary,
             applying Plaintiff's logic, one could excise the free replay and similar chance-

27

28                                                    17

DENTONS US LLP
1999 HARRISON STREET, SUITE 1300
OAKLAND, CALIFORNIA 94612
(415) 882-5000

based functions of any number of skill-based games—including pinball—and, viewing those aspects in isolation, find the games to violate section 330b.

*Id.*

Just as a *Game of War* is not a "slot machine"—as it is predominately one of skill, so too is Brawl Stars and the other games alleged (even if not played by Plaintiffs).  Nor are Plaintiffs able to establish the virtual items in loot boxes are "items of value" as defined by the Penal Code as they have no real-world monetary value.

### (b)   *Soto v. Sky Union, LLC*

The second court to reject Plaintiffs' theory and dismiss UCL claims against the game developer based on the Penal Code, *Soto v. Sky Union, LLC*, 159 F. Supp. 3d at 878-81 (California law), found that *Castle Clash*, a free-to-play mobile game available for download on the App Store, did not constitute a gambling slot machine under Section 330b as there was no "item of value." *Castle Clash* allowed players to use real money to purchase virtual "gems," which could then be used in the game to enter to win randomly selected in-game virtual prizes in loot boxes called "heroes." *Id.*  Because the "gems" and "heroes" could not be redeemed for real money or sold under the *Castle Clash* terms of service, the game did not violate Section 330b as the randomized virtual items which could be purchased did not constitute a "thing of value."  *Id.*

> [Plaintiffs] allege that high quality Heroes and Talents *improve* gameplay. ***Added enjoyment simply does not have measurable worth, and it cannot be a "thing of value" under section 330b(d).***
>
> Heroes and Talents are not exchangeable for real money or other goods, either within the game or in the real world. Ultimately, players who use their purchased gems to play Rolls are not paying for the chance to win anything of measurable value. Because Heroes and Talents are not "piece[s] of money, credit[s], allowance[s], or thing[s] of value," "additional chance[s] or right[s] to use" Castle Clash or its Rolls, or "check[s], slug[s], token[s], or memorand[a], whether of value or otherwise, which may be exchanged for any money, credit, allowance, or thing of value, or which may be given in trade," neither Castle Clash nor its Roll games constitute slot machines under California Law. Cal. Penal Code § 330b(d).

159 F. Supp. 3d at 880 (bold italic emphasis added).  The Court found irrelevant to this analysis plaintiffs' allegations of a secondary market on which accounts containing rare or valued prizes could

DENTONS US LLP
1999 HARRISON STREET, SUITE 1300
OAKLAND, CALIFORNIA 94612
(415) 882-5000

be sold for real money.  *Id.*  The only distinction here, is that Plaintiffs are one step even further

removed as the bring this claim not against the game but the platform the game app sits—offering no

reason for why the marketplace is more liable than the game alleged to be a slot machine.

*Mason* and *Soto* are consistent with other courts that have considered loot boxes and rejected

Plaintiffs' theory.  *Mason*, *supra*, 851 F.3d at 319–20 (no economic harm suffered under Maryland

consumer protection statute in using virtual currency to buy loot box for use in game); *Ristic*, 2016

WL 4987943, at *4 (no claim under Illinois' Consumer Fraud Act for spending virtual currency to

spin a virtual "wheel" in *Game of War*).  *Mason* and *Soto* are also consistent with California law

construing the same Penal Code provisions, which distinguish between prizes with real world

monetary value and those without.  *E.g., Trinkle v. Cal. State Lottery*, 105 Cal. App. 4th 1401, 1403–

05 (2003) (machine dispensing lottery scratchers in the sequential order they were loaded is not a

"slot machine").[13]

At bottom, neither the borrowed Penal Code sections' language, the cases directly on point

construing those sections, nor the most analogous authority support Plaintiffs' premise that games

with loot boxes constitute illegal slot machines.  Or perhaps more importantly here, how the platform

the game apps sit on could somehow be liable when the game itself is not an illegal slot machine.

### 2. Plaintiffs' Other Borrowed Legal Violations Likewise Fail.

Because Plaintiffs' Penal Code predicates fail, all of their other predicates must also fail.

#### (a) Federal Gambling Statutes.

Plaintiffs cite two federal gambling statutes to support their UCL "unlawful" claim, both of

which themselves are predicated upon a violation of state law: (1) the Illegal Gambling Business Act

---

[13] While *Mason* and *Soto* appear to be the only cases addressing Plaintiffs' specific Penal Code premise, loot boxes have been challenged without success in other cases on different issues.  *Doe v. Epic Games*, N.D. Cal. Case No. 4:19-cv-03629-YGR (plaintiff failed to state a claim under CLRA in putative class action against Epic Games arising out of plaintiff's in-app purchases while playing game Fortnite, because in-game credits used to purchase skins were not "goods" under the CLRA); *R.A. v. Epic Games*, C.D. Cal. Case No. CV 19-1488-GW-Ex transferred to E.D.N.C. Case No. 5:19-cv-325-BO (suit against Epic Games over loot boxes dismissed after finding that plaintiff, by asserting minor's lack of capacity to disaffirm Epic's terms to avoid arbitration, had also disaffirmed their right to complain about in-app purchases as they were governed by same terms).

19

Dentons US LLP
1999 Harrison street, Suite 1300
Oakland, California 94612
(415) 882-5000

1   (18 U.S.C. § 1955(b)(1)(i)); and (2) Unlawful Internet Gambling Enforcement Act of 2006 (31

2   U.S.C. §§ 5361–5367).  *See U.S. v. E.C. Investments, Inc.*, 77 F.3d 327, 329 (9th Cir. 1996)

3   (California Penal Code section 330b is a predicate state offense for purposes of 18 U.S.C. § 1955,

4   which requires that the predicate offense be a "violation of the law of the State."); *State of California*

5   *v. Iipay Nation of Santa Ysabel*, 898 F.3d 960, 965 (9th Cir. 2018) ("unlawful Internet gambling"

6   occurs where a bet or wager is unlawful under any applicable Federal or State law in the State or

7   Tribal lands in which the bet or wager is initiated, received, or otherwise made).

8        As Plaintiffs and Apple are both in California, Plaintiffs must show a violation of California

9   law.[14]  Compl. ¶14.  Where, as here, the California Penal Code claim fails, so too do Plaintiffs'

10  federal gambling predicates.

11                    **(b)    Fraud.**

12       Plaintiffs cite California Civil Code sections 1710 and 1711, which codify common law fraud,

13  as UCL predicates.  Compl. ¶¶ 103, 106.[15]  Yet Plaintiffs do not actually allege ***any*** fraudulent

14  conduct by Apple.  At a threshold level, this fails to meet the pleading requirements of Rule 9(b),

15  which applies to UCL claims alleging fraud.  *See Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1125

16  (9th Cir. 2008) ("Rule 9(b)'s heightened pleading standards apply to claims for violations of the

17  CLRA and UCL.").  Under Rule 9(b), Plaintiffs must allege "the who, what, when, where and how"

18  of allegedly false representations.  *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1106 (9th Cir.

19  2003).  Plaintiffs do not allege ***any*** representation by Apple they relied upon to their detriment.  At

20  best, what can be gleaned from the Complaint is that Apple, in publishing the developers' game

21  information, omitted information and misled Plaintiffs "concerning the addictive, costly and random

22  chance nature of the Loot Box mechanism" and its use in App Store games (*e.g.*, Compl. ¶ 105(c))

23  and that Apple failed to disclose that loot boxes are harmful to minors because they are unlawful

---

24  [14] Plaintiffs' theory has not found success under any state's law.  *See, e.g.*, *Mason*, *supra*, 851 F.3d at
25  319; *Ristic*, *supra*, 2016 WL 4987943.

26  [15] Section 1710 codifies four species of fraud: intentional and negligent misrepresentation,
27  promissory fraud and concealment.  Section 1711 permits fraud to be alleged across a class.

28                                        20

DENTONS US LLP
1999 HARRISON STREET, SUITE 1300
OAKLAND, CALIFORNIA 94612
(415) 882-5000

DENTONS US LLP
1999 HARRISON STREET, SUITE 1300
OAKLAND, CALIFORNIA 94612
(415) 882-5000

gambling, which is harmful.[16]  These vague allegations, which primarily attack developers' game features, do not tie any "who, what, where or how" to Apple and fail Rule 9(b)'s standard.

And, to the extent Plaintiffs did seek to allege a fraudulent omission by Apple, it would fail as a matter of law.  Fraud claims founded on non-disclosure can survive a motion to dismiss only if a legal duty to disclose exists.  *E.g., Eller v. EquiTrust Life Ins. Co*., 778 F.3d 1089, 1092 (9th Cir. 2015) ("Absent an independent duty, such as a fiduciary duty or an explicit statutory duty, failure to disclose cannot be the basis of a fraudulent scheme.").  California law is clear that a duty to disclose only exists where there is a fiduciary or other special relationship between the parties, something obviously absent here.  *Reyes v. Atlantic Richfield Co*., 12 F.3d 1464, 1472 (9th Cir. 1993) ("Parties engaged in an arm's length business transaction do not have a duty to disclose absent a 'fiduciary or other similar relationship of trust and confidence.'").  There is also no allegation that Apple had exclusive knowledge about loot boxes not available to the general public, including Plaintiffs— indeed Plaintiffs' allegations about the alleged harm posed by loot boxes consist of information taken from the internet and other publicly available sources.  Compl. ¶¶ 11, 30, 39, 51, 53, 57, 75–76.

Any fraud claim would also fail because Plaintiffs do not and cannot plausibly allege reasonable reliance.  *Backhaut v. Apple, Inc*., 74 F. Supp. 3d 1033, 1048-49 (N.D. Cal. 2014) (imposing reliance requirement on UCL claims "based on alleged misrepresentations, omissions, and fraudulent conduct by Apple").  Plaintiffs fail to allege having actually read any unspecified representation by Apple, which is by itself fatal.  *E.g., Figy v. Amy's Kitchen, Inc*., No. CV 13-03816 SI, 2013 WL 6169503, at *4 (N.D. Cal. Nov. 25, 2013); *Durell v. Sharp Healthcare*, 183 Cal. App. 4th 1350, 1363 (2010); *see also Thrifty Payless, Inc. v. The Americana at Brand, LLC*, 218 Cal. App. 4th 1230, 1239 (2013) (plaintiff could restrict the payment feature and payment information to block

---

[16] Despite the Complaint's focus on minors, Plaintiffs actually allege a nationwide class consisting of *all* persons—adults or minors—who made in-app purchases of loot boxes in games downloaded through the App Store.  *See* Compl. ¶¶ 91–98.

Case No. 3:20-CV-03906-RS
APPLE'S NOTICE OF MOTION AND MOTION TO DISMISS; MEMORANDUM
115374918

in-app purchases).[17]   Scienter is also glaringly absent, as Plaintiffs do not allege how it is that Apple acted with intent to deceive them—a flaw which is especially acute because Plaintiffs' fraud accusation arises out of the content within games that Apple did not develop or create.  *Engalla v. Permanente Medical Group, Inc.*, 15 Cal. 4th 951, 974 (1997).  Nor can Plaintiffs establish the games are illegal gambling.  Plaintiffs' fraud claims fail to buoy the UCL or CLRA causes of action.

### (c)   Plaintiffs' CLRA Claim Fails As A UCL Predicate And As A Standalone Claim.

Plaintiffs' CLRA claim fails, as either a UCL predicate or standalone claim.  The sole CLRA provision alleged in the Complaint, Cal. Civ. Code § 1770(a)(14), prohibits "representing that a transaction confers or involves rights, remedies, or obligations that it does not have or involve, ***or that are prohibited by law***" (emphasis added).  Because Plaintiffs cannot establish a violation of the Penal Code, and each legal violation alleged in the Complaint fails, the CLRA claim must also fail.

Plaintiffs' CLRA claim also fails, however, because the virtual currency used to buy loot boxes are not "goods or services" under the CLRA.  Cal. Civ. Code § 1770(a); *see e.g., I.B. ex rel. Fife v. Facebook, Inc.*, 905 F. Supp. 2d 989, 1008 (N.D. Cal. 2012) (in-game credits purchased with plaintiffs' parents' credit cards were not "goods" under the CLRA).[18]   The CLRA is neither a claim upon which Plaintiffs can bootstrap their UCL cause of action nor a cause of action on its own.

### D.   Plaintiffs' UCL Unfair Prong Claim Fails Under All Three Tests.

Plaintiffs' UCL "unfair" claim easily fails all tests used by California courts.  *See Davis v. HSBC Bank Nevada, N.A.*, 691 F.3d 1152, 1169-70 (9th Cir. 2012) (explaining the three tests).

---

[17]  Plaintiffs cannot so allege since she had the option to restrict or even altogether prohibit in-app purchases (RJN, Ex. A (Apple Terms §§ D, G)), and could also restrict the payment feature and payment information to block in-app purchases (RJN, Ex. A (Apple Terms §§ D, G)).

[18]  *See also Doe v. Epic Games, Inc.*, 435 F. Supp. 3d 1024, 1045-46 (N.D. Cal. 2020) (plaintiff failed to state a CLRA claim in putative class action against Epic Games arising out of plaintiff's in-app purchases while playing game Fortnite, because in-game credits used to purchase virtual items like skins were not "goods"); *Berry v. American Express Publishing, Inc.*, 147 Cal. App. 4th 224, 227 (2007) (extension of credit was not a good under the CLRA and that, even though the CLRA is broad, "courts may not rewrite a statute under the guise of liberal interpretation").

DENTONS US LLP
1999 HARRISON STREET, SUITE 1300
OAKLAND, CALIFORNIA 94612
(415) 882-5000

DENTONS US LLP
1999 HARRISON STREET, SUITE 1300
OAKLAND, CALIFORNIA 94612
(415) 882-5000

Plaintiffs fail the "balancing" test as the in-app purchase of virtual currency was the only transaction actually involving Apple, and Plaintiffs do not and cannot attack this transaction. Plaintiffs intentionally gloss over this, instead targeting Apple for the loot box content found in games Apple ***did not develop***.[19]  But a game feature that is lawful is not "immoral, unethical, oppressive, unscrupulous, or substantially injurious to consumers." *Id.*[20]  Plaintiffs fail the "tethering" test because there is no violation of any constitutional, statutory or regulatory provision ***by Apple*** to which Plaintiffs could tether.  *Davis*, 691 F.3d at 1169-70 (discussing application of tethering test to consumer UCL claims).  Again, Apple did not develop the alleged games or the loot box content Plaintiffs attack.  Plaintiffs' reliance on the public policy against gambling and fraud thus fails, and anyway as explained above loot boxes do not violate the gambling statutes Plaintiffs cite in the first place.[21]  Lastly, Plaintiffs fail the "FTC" test (*Davis*, 691 F.3d at 1170) because Plaintiffs do not allege any harm that Plaintiffs were unable to easily avoid.  Of course, they cannot allege that

---

[19]  Plaintiffs also gloss over that loot boxes and the virtual items within them are optional features. For example, the developer of Brawl Stars, Supercell, explains that the game is free to play and that gems can be used to "speed up progress, but most of the game's content can be accessed with or without it." RJN, Ex. G (Supercell Support: Is Brawl Stars Free to Play?).  Supercell also explains that consumers do not need to spend real-world money to play, and that "every area of the game is equally accessible to all as you level up, regardless of whether you invest real money or not."  *Id.*

[20]  Plaintiffs asserts that legislators and regulators "all agree" that loot boxes "operate as gambling devices" and "create and reinforce addictive behaviors."  But the Complaint neglects to mention that California, the United States and much of the world have looked at loot boxes but not regulated them. Most importantly here, California legislation was proposed to regulate loot boxes in 2018 but failed to even make it to a vote, and the Federal Trade Commission held public hearings on loot boxes in 2019 but has not taken any action or issued any findings.  Azarmi Decl., ¶ 4.  Hawai`i, Washington and Minnesota also considered bills last year to regulate loot boxes—all of which similarly failed to pass—and a U.S. Senate bill was introduced in 2019 but has not been voted upon.  *Id.* ¶ 5.  Lastly, legislatures in Denmark, Australia, New Zealand and the United Kingdom determined that loot boxes are ***not*** gambling, further demonstrating the lack of present consensus.  *Id.* ¶¶ 6–7.

[21]  *See, e.g., Palmer v. Apple Inc*., No. 15-5808 RMW, 2016 WL 1535087, at *7 (N.D. Cal. Apr. 15, 2016) (allegation that defendant offended the "public policy in support of truth in advertising" insufficient for UCL claim); *San Miguel v. HP Inc.,* 317 F. Supp. 3d 1075, 1092 (N.D. Cal. 2018) (stating that HP's alleged misconduct "contravenes the legislatively declared policy against unfair methods of business competition" as too vague to allege a claim under UCL's unfair prong).

because Apple offers customer and parental controls that were readily available to them.[22]   Plaintiffs have not alleged an "injury" they could not easily avoid by their own conduct.

Plaintiffs cannot meet any UCL unfair prong test and the claim should be dismissed.

**E.     Plaintiffs' Unjust Enrichment Claim Fails Because It Is Not A Standalone Claim And, In Any Event, There Is No Legally Cognizable Misconduct.**

The unjust enrichment claim should fail under the majority view that unjust enrichment is not a standalone claim.  *ESG Capital Partners, LP v. Stratos*, 828 F.3d 1023, 1038 (9th Cir. 2016); *see also McBride v. Boughton*, 123 Cal. App. 4th 379, 387 (2004); *Sanders v. Apple Inc.,* No. C 08-1713, 2009 WL 150950, at *9 (N.D. Cal. Jan. 21, 2009) (unjust enrichment hinges on viability of other claims).  Under the minority view the elements of unjust enrichment are unjust receipt and retention of benefit at the expense of another.  *See Lectrodryer v. SeoulBank*, 77 Cal. App. 4th 723, 726 (2000). Even under this view, Plaintiffs' claim fails because: (1) Plaintiffs do not and cannot attack their purchase of virtual currency with real-world currency, so there is no "unjust retention"; and (2) Apple receives no benefit from the in-game exchange of virtual gems for loot boxes, and its commission on

---

[22] With regards to in-app purchases—including the purchase of virtual currency—every consumer acknowledges reading and agreeing to the following:

> Apps may offer content, services or functionality for use within such Apps ("In-App Purchases").  In-App Purchases that are consumed during the use of the App (for example, virtual gems) cannot be transferred among devices and can be downloaded only once.  You must authenticate your account before making In-App Purchases – separate from any authentication to obtain other Content – by entering your password or using Touch ID and Face ID.  You will be able to make additional In-App Purchases for fifteen minutes without re-authenticating unless you've asked us to require a password for every purchase or have enabled Touch ID or Face ID. *You can turn off the ability to make In-App Purchases by following these instructions*: https://support.apple.com/en-us/HT201304

RJN, Ex. A (Apple Terms § B)(emphasis added).  Apple also has a "Family Sharing" option, allowing the legal guardian to control purchases by enabling certain features that require permission beforehand—although, again, the Complaint's alleged class is *not even limited to minors*.  *Id.*  Lastly, Apple provides an easy four-step guide on how to disable in-app purchases with a helpful graphic. RJN, Exs. A (Apple Terms § B), K (Apple Support: Prevent iTunes and App Store Purchases).

Dentons US LLP
1999 Harrison Street, Suite 1300
Oakland, California 94612
(415) 882-5000

24

virtual currency is not unjust.  *See Williams v. Facebook*, 384 F. Supp. 3d 1043, 1057 (N.D. Cal. 2018) (plaintiffs must plausibly allege that defendants received a benefit at their expense ).[23]

### F.    Leave To Amend Should Be Denied.

Plaintiffs' Complaint fails to allege any claim against Apple.  Plaintiffs do not, because they cannot, allege that Apple as the platform provider for the game apps is responsible for the content in those games.  Nor has any court found the actual developers of the games liable for the complained-of loot box features.  Plaintiffs cannot bootstrap a claim that does not exist.  The flaws to Plaintiffs' claims are fatal and cannot be cured.  *Ascon Prop., Inc. v. Mobil Oil Co.,* 866 F.2d 1149, 1160 (9th Cir. 1989) ("[l]eave need not be granted where the amendment . . . constitutes an exercise in futility[.]").  The Complaint should be dismissed without leave to amend.

## IV.    CONCLUSION

For the reasons stated above, the Court should dismiss the Complaint without leave to amend.

August 24, 2020

Respectfully submitted,

**DENTONS US LLP**

By: /s/ *Laura Leigh Geist*
Laura Leigh Geist
Attorneys for Defendant
APPLE INC.

DENTONS US LLP
1999 HARRISON STREET, SUITE 1300
OAKLAND, CALIFORNIA 94612
(415) 882-5000

---

[23] Plaintiffs' attempt to seek compensation for unjust enrichment further shows that they cannot establish they lack an adequate remedy at law justifying equitable restitution for past harm under the CLRA.  *See Sonner v. Premier Nutrition Corporation*, 962 F.3d 1072, 1081 (9th Cir. 2020).  UCL and CLRA claims for equitable restitution are unavailable because Plaintiffs: (1) can recover damages under the CLRA; (2) cannot show that damages are inadequate here; and (3) the fact that their CLRA claim fails does not salvage their restitution claim under the UCL.  *Id.* at 1081-82.

25