1  BLOOD HURST & O'REARDON, LLP
   TIMOTHY G. BLOOD (149343)
2  THOMAS J. O'REARDON II (247952)
   501 West Broadway, Suite 1490
3  San Diego, CA  92101
   Tel: 619/338-1100
4  619/338-1101 (fax)
   tblood@bholaw.com
5  toreardon@bholaw.com

6  THE LAW OFFICES OF ANDREW J. BROWN
   ANDREW J. BROWN (160562)
7  501 West Broadway, Suite 1490
   San Diego, CA  92101
8  Tel: 619/501-6550
   andrewb@thebrownlawfirm.com
9
   Attorneys for Plaintiffs
10

11              **UNITED STATES DISTRICT COURT**

12     **NORTHERN DISTRICT OF CALIFORNIA – SAN FRANCISCO DIVISION**

13  REBECCA TAYLOR, and C.T., a minor by        Case No. 5:20-cv-03906-RS
    REBECCA TAYLOR, C.T.'s parent and
14  guardian, on behalf of themselves and all   **CLASS ACTION**
    others similarly situated,
15                                              **PLAINTIFFS' OPPOSITION TO**
                  Plaintiffs,                   **DEFENDANT'S MOTION TO DISMISS**
16                                              **CLASS ACTION COMPLAINT**
            v.
17                                              Date:        December 3, 2020
    APPLE, INC.,                                Time:         1:30 p.m.
18                                              District Judge Richard Seeborg
                  Defendant.                    Courtroom 3, 17th Floor
19
20                                              Complaint Filed:    June 12, 2020
                                                Trial Date:         Not Set
21
                                                **JURY TRIAL DEMANDED**
22

23

24

25

26

27

28
                                                         Case No. 5:20-cv-03906-RS

# TABLE OF CONTENTS

**Page**

I.      INTRODUCTION ................................................................................................1

II.     STATEMENT OF FACTS ..................................................................................2

III.    STANDARDS ON A MOTION TO DISMISS .................................................4

IV.     ARGUMENT ......................................................................................................4

      A.   Apple Engages in Gambling Activity and Is Not Immune Under 47 U.S.C. § 230(c) ....................................................................................................4

            1.   Plaintiffs Challenge Apple's Conduct, Not Content Published by Others ...........................................................................................4

            2.   Apple Is a "Content Provider" Under 47 U.S.C. § 230(f)(3) .......................7

      B.   Plaintiffs Readily Meet the UCL and CLRA Standing Requirements .....................8

      C.   Plaintiffs' UCL Unlawful Prong and CLRA Claims are Adequately Pleaded ........12

            1.   Apple Violates California's Gambling Prohibitions ...................................13

                  a.   The Loot Boxes Are Not "Games of Skill" ....................................14

            2.   Apple Violates Federal Gambling Laws .....................................................18

            3.   Apple Violates California's Deceit Statutes ................................................18

      D.   Plaintiffs' CLRA Claim is Adequately Alleged and Also Constitutes a Predicate Violation of the UCL ................................................................19

      E.   Apple's Conduct Violates the UCL's Unfair Prong ................................................21

      F.   Plaintiffs Adequately Allege Unjust Enrichment ....................................................24

V.      CONCLUSION ................................................................................................25

00169166

1

## **<u>TABLE OF AUTHORITIES</u>**

2

**Page(s)**

3

**Cases**

4

*Ashcroft v. Iqbal,*
5
    556 U.S. 662 (2009) ...............................................................................................................4

6

*Barnes v. Yahoo!, Inc.,*
    570 F.3d 1096 (9th Cir. 2009) ..........................................................................................4, 5
7

*Bell Atl. Corp. v. Twombly,*
8
    550 U.S. 544 (2007) ...............................................................................................................4

9

*Bell Gardens Bicycle Club v. Department of Justice,*
    36 Cal. App. 4th 717 (1995) ................................................................................................11
10

11

*Bolger v. Amazon.com, LLC,*
    53 Cal. App. 5th 431, 464-66 (2020) ....................................................................................6
12

*Bruton v. Gerber Prods. Co.,*
13
    703 Fed. Appx. 468 (9th Cir. 2017) ...................................................................................24

14

*Carafano v. Metrospalsh.com, Inc.,*
    339 F.3d 1119 (9th Cir. 2003) ...............................................................................................5
15

16

*Cel-Tech Commc'ns, Inc. v. L.A. Cellular Tel. Co.,*
    20 Cal. 4th 163 (1999) ...................................................................................................13, 22
17

*Chaset v. Fleer/Skybox Int'l*
18
    300 F.3d 1083 (9th Cir. 2002) ............................................................................................11

19

*Clayworth v. Pfizer, Inc.,*
    49 Cal. 4th 758 (2010) ..........................................................................................................8
20

21

*Consumers Union of U.S., Inc. v. Alta-Dena Certified Dairy,*
    4 Cal. App. 4th 963 (1992) ..................................................................................................13
22

*Dent v. NFL,*
23
    968 F.3d 1126 (9th Cir. 2020) ..............................................................................................4

24

*Deutsch v. Cook,*
    No. 1:19-cv-00281, 2020 U.S. Dist. LEXIS 34572 (E.D. Cal. Feb. 28, 2020) ...................24
25

26

*Dumas v. Major League Baseball Props., Inc.,*
    104 F. Supp. 2d 1220 (S.D. Cal. 2000) ...............................................................................11
27

*Engalla v. Permanente Med. Grp., Inc.,*
28
    15 Cal. 4th 951 (1997).........................................................................................................19

00169166

*Epic Games, Inc. v. Apple Inc.*,
   No. 4:19-cv-03074-YGR (N.D. Cal.) ...................................................................21

*Fair Hous. Council v. Roommates.com, LLC*,
   521 F.3d 1157 (9th Cir. 2008) ................................................................ *passim*

*Frank v. J.P. Morgan Chase Bank, N.A.*,
   No. 15-cv-05811, 2016 U.S. Dist. LEXIS 70879 (N.D. Cal. May 31, 2016) ...........................22

*Franz v. Beiersdorf, Inc.*,
   745 Fed. Appx. 47 (9th Cir. 2018) ...................................................................12

*Free Kick Master LLC v. Apple Inc.*,
   140 F. Supp. 3d 975 (N.D. Cal. 2015) ...................................................................6

*FTC v. Neovi, Inc.*,
   604 F.3d 1150 (9th Cir. 2010) ...................................................................12

*FTC v. R.F. Keppel & Bros., Inc.*,
   291 U.S. 304 (1934) ...................................................................24

*People ex rel. Green v. Grewal*,
   61 Cal. 4th 544 (2015) ...................................................................14, 16

*Hansen v. Newegg.com Americas, Inc.*,
   25 Cal. App. 5th 714, 731 (2018) ...................................................................8

*People ex rel. Harris v. Pac. Anchor Transp., Inc.*,
   59 Cal. 4th 772 (2014) ...................................................................8

*Hinojos v. Kohl's Corp.*,
   718 F.3d 1098 (9th Cir. 2013) ...................................................................8

*Holmes v. Saunders*,
   114 Cal. App. 2d 389 (1952) ...................................................................12

*HomeAway.com v. Santa Monica*,
   918 F.3d 676 (9th Cir. 2018) ...................................................................5

*In re iPhone Application Litig.*,
   844 F. Supp. 2d 1040 (N.D. Cal. 2012) ...................................................................23

*Kater v. Churchill Downs Inc.*,
   886 F.3d 784 (9th Cir. 2018) ...................................................................9, 15, 16, 17

*Kwikset Corp. v. Super. Ct.*,
   51 Cal. 4th 310 (2011) ...................................................................8, 19

*L.A. Unified Sch. Dist. v. Great Am. Ins. Co.*,
   49 Cal. 4th 739 (2010) ...................................................................19

*People ex rel. Lockyer v. Fremont Life Ins. Co.*,
   104 Cal. App. 4th 508 (2002)............................................................................13

*Major League Baseball Props., Inc. v. Price*,
   105 F. Supp. 2d 46 (E.D.N.Y. 2000)................................................................11

*Mason v. Mach. Zone, Inc.*,
   140 F. Supp. 3d 457 (D. Md. 2015) .......................................................9, 10, 14, 17

*Mason v. Mach. Zone, Inc.*,
   851 F.3d 315 (4th Cir. 2017)...............................................................................9

*Mass. Mut. Life Ins. Co. v. Super. Ct.*,
   97 Cal. App. 4th 1282 (2002)............................................................................19

*McAdams v. Monier, Inc.*,
   182 Cal. App. 4th 174 (2010)............................................................................19

*McKell v. Wash. Mut., Inc.*,
   142 Cal. App. 4th 1457 (2006)...................................................................13, 22

*Merandette v. City & Cty. of S.F.*,
   88 Cal. App. 3d 105 (1979)...............................................................................15

*Moore v. Mars Petcare US, Inc.*,
   966 F.3d 1007 (9th Cir. 2020)............................................................................25

*Nationwide Biweekly Admin., Inc. v. Super. Ct.*,
   9 Cal. 5th 279, 303............................................................................................22

*Opperman v. Path, Inc.*,
   87 F. Supp. 3d 1018 (N.D. Cal 2014) ............................................................5, 7

*People v. Gonzales*,
   62 Cal. App. 2d 274 (1944)...............................................................................12

*People v. Hecht*,
   119 Cal. App. Supp. 778 (1931)........................................................................12

*Philpott v. Super. Ct.*,
   1 Cal. 2d 512 (1934)..........................................................................................25

*Pirozzi v. Apple, Inc.*,
   966 F. Supp. 2d 909 (N.D. Cal. 2013) ..............................................................23

*Prakashpalan v. Engstrom, Lipscomb & Lack*,
   223 Cal. App. 4th 1105 (2014)..........................................................................25

*Price v. Pinnacle Brands, Inc.*,
   138 F.3d 602 (5th Cir. 1998)..............................................................................11

00169166

*Process Specialties, Inc. v. Sematech, Inc.*,
   No. S-00-414N, 2001 U.S. Dist. LEXIS 26261 (E.D. Cal. Nov. 8, 2001)................................25

*Progressive W. Ins. Co. v. Super. Ct.*,
   135 Cal. App. 4th 263 (2005).................................................................................................22

*Retail Prop. Trust v. United Bhd. of Carpenters & Joiners of Am.*,
   768 F.3d 938 (9th Cir. 2014)....................................................................................................4

*Ristic v. Mach. Zone, Inc.*,
   No. 15-cv-8996, 2016 U.S. Dist. LEXIS 127056 (N.D. Ill. Sept. 19, 2016) ..........................17

*Rodriguez v. Topps Co.*,
   104 F. Supp. 2d 1224 (S.D. Cal. 2000) ..................................................................................11

*Rosenthal & Rosenthal of Cal., Inc. v. Hilco Trading, LLC*,
   No. 2:19-cv-10315, 2020 U.S. Dist. LEXIS 87219 (C.D. Cal. Apr. 14, 2020) ........................24

*Safeway, Inc. v. Super. Ct.*,
   238 Cal. App. 4th 1138 (2015).................................................................................................22

*Schnall v. Hertz Corp.*,
   78 Cal. App. 4th 1144 (2000)...................................................................................................22

*Schwartz v. Upper Deck Co.*,
   104 F. Supp. 2d 1228 (S.D. Cal. 2000) ..................................................................................11

*In re Seizure of Any & All Funds Held in Rep. Bank of Ariz. Accounts*,
   No. 2:18-cv-6742, 2019 U.S. Dist. LEXIS 231307 (C.D. Cal. Dec. 20, 2019) ...................5, 14

*In re Solara Med. Supplies, LLC Customer Data Sec. Breach Litig.*,
   No. 3:19-cv-2284, 2020 U.S. Dist. LEXIS 80736 (S.D. Cal. May 7, 2020)............................24

*Soto v. Sky Union, LLC*,
   159 F. Supp. 3d 871 (N.D. Ill. 2016) .....................................................................................17

*Steroid Hormone Prod. Cases*,
   181 Cal. App. 4th 145 (2010)...................................................................................................19

*Trinkle v. Stroh*,
   60 Cal. App. 4th 771 (1997)....................................................................................................15

*Vess v. Ciba-Geigy Corp. USA*,
   317 F.3d 1097 (9th Cir. 2003)..................................................................................................18

*Williams v. Facebook, Inc.*,
   384 F. Supp. 3d 1043 (N.D. Cal. 2018) ..................................................................................24

*Williams v. Gerber Prods. Co.*,
   523 F.3d 934 (9th Cir. 2008)....................................................................................................22

*Williams v. Gerber Prods. Co.*,
   552 F.3d 934 (9th Cir. 2008) .................................................................................4

*Yagman v. Garcetti*,
   852 F.3d 859 (9th Cir. 2017) ...............................................................................25

*In re Yahoo! Inc. Customer Data Sec. Breach Litig.*,
   313 F. Supp. 3d 1113 (N.D. Cal. 2018) ..............................................................21

*Yothers v. JFC Int'l, Inc.*,
   No. 20-cv-01657, 2020 U.S. Dist. LEXIS 156470 (N.D. Cal. May 14, 2020) .........................24

*Zaragoza v. Apple Inc.*,
   No. 18-cv-06139, 2019 U.S. Dist. LEXIS 40916 (N.D. Cal. Mar. 13, 2019) ...........................21

**Statutes and Rules**

Cal. Bus. & Prof. Code
   § 17204 ..................................................................................................8
   § 19801(c) .............................................................................................23
   § 19801(d) .............................................................................................23
   § 19801(i) .............................................................................................23

Cal. Civ. Code
   § 1710(3) ..............................................................................................19
   § 1761(b) ..............................................................................................20
   § 1770(a)(14) .........................................................................................17
   § 3548 .................................................................................................19

Cal. Penal Code
   § 330a(a) ..............................................................................................20
   § 330b(a) ..........................................................................................12, 20
   § 330b(d) ........................................................................................7, 15, 16
   § 330b(f) ..............................................................................................14
   § 330.2 ................................................................................................16

Fed. R. Civ. P. 8(a)(2) .......................................................................................4

47 U.S.C. § 230(c) ....................................................................................4, 7, 8

47 U.S.C. § 230(f)(3) .........................................................................................7

PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION TO DISMISS CLASS ACTION COMPLAINT

1    Plaintiffs Rebecca Taylor, and C.T., a minor by Rebecca Taylor, C.T.'s parent and guardian,
2    on behalf of themselves and all others similarly situated("Plaintiffs"), submit this opposition to
3    Defendant Apple, Inc.'s ("Defendant" or "Apple") Motion to Dismiss Class Action Complaint. ECF
4    No. 24 ("MTD").

5    **I.    INTRODUCTION**

6        It is against California law for anyone to sell chances on gambling devices of any kind unless
7    licensed. For minors, it is never legal. These laws support California's strong public policy against
8    gambling because gambling causes compulsive and addictive behaviors and can result in a whole
9    host of psychological and financial problems. In recent years, independent, peer-reviewed high-
10   quality research has been performed on the effects playing Loot Boxes have on adolescents and
11   adults. This science finds that Loot Boxes cause the same problems as other forms of gambling and
12   are especially pronounced in adolescents.

13       When it comes to Loot Boxes, Apple functions as a casino. Just as a casino does not make
14   slot machines, Apple does not make Loot Boxes, but it enables them to operate and facilitates them
15   in its App Store, while providing misleading descriptions and age-designations of these games. And
16   just like a physical casino exchanging cash for poker chips, the Loot Box player pays money directly
17   to Apple to receive the virtual currency used to purchase a chance on a Loot Box. In fact, paying
18   Apple for virtual currency is the only way a gamer can purchase a chance on a Loot Box. In return
19   for its efforts, Apple takes a 30% rake on every Loot Box sale. That is, Apple actively participates
20   in, encourages, and profits from illegal gambling through its App Store. The fact that it occurs online
21   rather than in a casino does not mean it "magically become[s] lawful." *Fair Hous. Council v.*
22   *Roommates.com, LLC*, 521 F.3d 1157, 1164 (9th Cir. 2008) (en banc).

23       Ignoring this and controlling Ninth Circuit case law, Apple relies on outdated district court
24   cases from Maryland and Illinois to support its arguments. Apple contends it is immune from suit
25   because its App Store is an "interactive computer service" that blindly publishes others' content.
26   MTD at 9-11. But this case does not involve merely republishing content. It involves the promotion
27   of an activity – illegal gambling. Apple also participates in creating and requiring certain content
28   for which it is "responsible, in whole or in part, for creating or developing." *Fair Hous.*, 521 F.3d

at 1162.

Apple also makes the factual argument that it cannot be liable for Loot Box gambling because it only sells the virtual currency that is used to purchase the Loot Box – and takes its cut from that sale – but does not actually profit from the Loot Box purchase itself. MTD at 2, 3, 9, 11, 12, 13, 23, 24. The argument proves too much. Apple profits when it sells the virtual currency, which, like a gambling chip, is then used to purchase a chance on a Loot Box. As Plaintiffs contend and as Apple's argument shows, Apple is an integral and necessary part of the gambling activity.

Apple's other points merit little consideration as they simply ignore the well-pleaded allegations in the complaint or the applicable case law. For example, Apple claims (without factual or legal support) that Loot Boxes cannot be gambling devices because they are found within "games of skill," referring to the video games in which Loot Boxes are sold. The argument is factually incorrect and is contradicted by Plaintiffs' allegations. Apple's remaining arguments fare no better.

Apple's motion to dismiss should be denied.

## II.   STATEMENT OF FACTS

Many video games available in Apple's App Store contain "Loot Boxes." A Loot Box is a game of chance offered within another video game, downloaded and played on an Apple device. It is like a slot machine. A player uses real money to buy virtual currency from Apple, and then uses that virtual currency to purchase a chance on a Loot Box, just as one buys chips to then use to gamble. ¶¶ 4, 30-31, 34-35.[1] Just like a slot machine, when the player clicks on the Loot Box, bells and whistles sound, lights flash and anticipation grows in the hope that the player will receive something rare and highly desirable. ¶¶ 7, 37-40, 47. But the odds of winning any of the desirable prizes are low, and often lower than permitted with legal slot machines. ¶¶ 41-42, 64, 69, 76.

As an extensive body of science published in recent years now shows, Loot Boxes are a predatory form of in-game gambling designed to take advantage of children, adolescents, and adults. Playing them leads to the same problems caused by other forms of gambling, including depression and gambling addiction. ¶¶ 11, 77-88. The prevalence of Loot Boxes has grown rapidly and now

---

[1]    All "¶¶" references are to Plaintiffs' Class Action Complaint. ECF No. 1.

1   generates huge sums for Apple and the videogame developers it works with. ¶¶ 3, 13, 55-56, 96.

2   Referring to Loot Boxes, the Co-Founder of prominent game developer Epic Games asked, "Do we

3   want to be like Las Vegas, with slot machines or do we want to be widely respected as creators of

4   products that customers can trust?" *See* Complaint, Page 2.

5         It is no coincidence Loot Boxes squarely fit the definition of a gambling device. They are

6   designed with sensory appeal – bright lights, vibrant colors, triumphant sounds – while offering the

7   randomized chance at prizes highly valued by players. Governments and regulators around the world

8   have taken notice and are acting. ¶¶ 8, 77 - 80. Loot Boxes are banned outright in Belgium and the

9   Netherlands. ¶ 77. England is considering a ban. ¶ 10. Other countries are eyeing regulations such

10  as age restrictions. ¶ 79. Here in the U.S., the FTC recently held a workshop focused on the problems

11  caused by Loot Boxes, while a bipartisan bill is pending in the Senate to ban Loot Boxes in games

12  made for children and adolescents. ¶ 80. In California, legislation already exists that prohibits games

13  such as Loot Boxes. It is these California laws that form the predicates for this case.

14        Superficially, Loot Boxes come in a variety of forms with differing names. Hundreds of

15  games offered in the App Store have them. ¶¶ 3, 25. These games are played when downloaded

16  from Apple onto an Apple iOS-enabled device such as an iPhone or iPad. ¶ 25.

17        Apple actively controls gambling in the games offered in its App Store, adding content in

18  several ways. For example, Apple requires developers to publish the odds of winning the prizes

19  offered in a Loot Box. ¶¶ 12, 41. Apple also publishes the age-rating system for each game,

20  purporting to include relevant content disclosures so a player or his or her parents can determine the

21  games suitability. ¶¶ 93-94. Yet Apple only vaguely discloses that a game with Loot Boxes permits

22  "in-app purchases," never discloses that the in-app purchases include Loot Boxes, and never

23  discloses that Loot Boxes are gambling devices. ¶¶ 94-95.

24        Apple also controls all aspects of the Loot Box purchase. Loot Boxes must be purchased

25  with the virtual currency Apple alone exchanges for cash. ¶¶ 27, 31-35. The gamer must set up an

26  account with Apple to buy virtual currency from Apple in the App Store. ¶¶ 32-33. Apple maintains

27  the purchase transactions. *Id.* Apple keeps 30% for itself. *Id.* Apple also sells Apple gift cards

28  ("iTunes" cards) that can be used to purchase a chance on a Loot Box. Apple sells the gift cards

PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION TO DISMISS CLASS ACTION COMPLAINT

directly to consumers for use only through Apple and its devices. ¶ 31.

## III.  STANDARDS ON A MOTION TO DISMISS

A complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief" to give the defendant "fair notice" of what the claims are and the grounds upon which they rest. Fed. R. Civ. P. 8(a)(2); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).[2] When considering a motion to dismiss, the Court "must [take] as true all factual allegations in the complaint and draw all reasonable inferences in favor of the nonmoving party." *Retail Prop. Trust v. United Bhd. of Carpenters & Joiners of Am.*, 768 F.3d 938, 945 (9th Cir. 2014).

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* at 678 (citing *Twombly*, 550 U.S. at 557). Only under "rare" circumstances is Rule 12(b)(6) dismissal proper. *Williams v. Gerber Prods. Co.*, 552 F.3d 934, 939 (9th Cir. 2008); *see also Dent v. NFL*, 968 F.3d 1126, 1130 (9th Cir. 2020) ("Dismissal is only proper where the allegations in the complaint do not factually support a cognizable legal theory."). Defendant does not meet this burden.

## IV.  ARGUMENT

### A.  Apple Engages in Gambling Activity and Is Not Immune Under 47 U.S.C. § 230(c)

Ignoring the Ninth Circuit's leading cases, Defendant first claims "immunity" under 47 U.S.C. § 230(c) of the Communications Decency Act ("CDA") by falsely asserting Plaintiffs only challenge the "content" provided by developers that is merely re-published by Apple. But the Ninth Circuit in *Fair Housing*, 521 F.3d 1157 (9th Cir. 2008) (en banc) and *Barnes v. Yahoo!, Inc.*, 570 F.3d 1096 (9th Cir. 2009), holds otherwise.

#### 1.  Plaintiffs Challenge Apple's Conduct, Not Content Published by Others

47 U.S.C. § 230(c) "only protects from liability (1) a provider or user of an interactive

---

[2]   Unless otherwise stated, emphasis is added and citations and internal quotations are omitted.

PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION TO DISMISS CLASS ACTION COMPLAINT

computer service (2) whom a plaintiff seeks to treat, under a state law cause of action, as a publisher or speaker (3) of information provided by another information content provider." *Barnes*, 570 F.3d at 1100-01. "The Communications Decency Act was not meant to create a lawless no-man's-land on the Internet." *Fair Hous.*, 521 F.3d at 1164. Rather, section 230(c) was designed "to promote the free exchange of information and ideas over the Internet and to encourage voluntary monitoring for offensive or obscene material." *Carafano v. Metrospalsh.com, Inc.*, 339 F.3d 1119, 1122 (9th Cir. 2003). In this case, Plaintiffs do not seek to treat Apple as the publisher or speaker of another's information. Instead, Plaintiffs seek to hold Apple accountable for controlling and operating an illegal gambling device.

Plaintiffs do not challenge the particular words, names, colors, sounds or images of Loot Boxes, but the operation of the Loot Box as a gambling device. The challenge is to the operation of the slot machine, and not to the imagery or words printed on a given slot machine. It is Apple's active participation, enablement of a gambling device that concerns Plaintiffs. As the Ninth Circuit instructs, an activity or conduct that is unlawful outside of the internet does not "magically become lawful" when conducted online. *Fair Hous.*, 521 F.3d at 1164.

Therefore, Section 230(c) protections are not available to interactive computer services such as Apple's App Store when their conduct is illegal. For example, when Yahoo! promised to remove offending personal material from its website, and then did not do it, it could be liable on a theory of promissory estoppel. *Barnes*, 570 F.3d at 1109. Likewise, where a website engages in discriminatory conduct and helps its users do the same, it is liable even if third parties provide the discriminatory information. *Fair Hous.*, 521 F.3d at 1171. And Airbnb was not immune under Section 230 for allowing its website to facilitate unlicensed booking transactions. *HomeAway.com v. Santa Monica*, 918 F.3d 676, 684 (9th Cir. 2018).

Federal district and state courts have repeatedly enforced this straight-forward principle. *See, e.g., In re Seizure of Any & All Funds Held in Rep. Bank of Ariz. Accounts*, No. 2:18-cv-6742, 2019 U.S. Dist. LEXIS 231307, at *15 (C.D. Cal. Dec. 20, 2019) ("The CDA does not provide immunity for participation in illegal activity."); *Opperman v. Path, Inc.*, 87 F. Supp. 3d 1018, 1044 (N.D. Cal 2014) (No CDA immunity where "allegations target conduct that goes beyond the traditional

editorial functions of a publisher, and beyond providing neutral tools to carry out what may be unlawful or illicit conduct."); *Bolger v. Amazon.com, LLC*, 53 Cal. App. 5th 431, 464-66 (2020) (CDA does not provide Amazon.com immunity for selling defective third-party goods on its website where claims are "based on Amazon's own conduct … not the content of Lenoge's product listing").

Here, Apple actively participates in illegal gambling by acting as the virtual casino. It operates the App Store, which: (1) houses the Loot Boxes; (2) tightly controls the type of activity performed on the platform; (3) makes representations concerning the content of each Loot Box-enabled game in its "content ratings," while omitting other key facts; and (4) controls every aspect of the exchange of cash by gamers exclusively through the Apple accounts it requires players to create, or through iTunes gift cards it alone sells. The virtual currency purchased from Apple is the equivalent of poker chips, which are required to pay for and play Loot Boxes. None of these activities are those of a publisher of third-party content. Unlike cases cited by Defendant, playing a Loot Box is not viewing content – it is an activity.

For these reasons, the case law Apple cites is distinguishable. For example, in *Free Kick Master LLC v. Apple Inc.*, 140 F. Supp. 3d 975, 983 (N.D. Cal. 2015) (MTD at 10) the court held section 230(c) protected defendants from trademark claims because there was no allegation defendants "provided encouragement or assistance in the allegedly infringing use of plaintiff's mark on the products, or that [it] had notice that the third-party use was unlicensed and infringing." Here, Apple not only "has notice" (it requires developers to publish the Loot Box odds of winning), but it encourages consumers to download the games with Loot Boxes using deceptive content descriptions and ratings, creates the exclusive mechanism for consumers to purchase Loot Boxes, and handles every aspect of the financial transactions. In fact, Apple knows the use of "intermediate" currencies, whether physical poker chips or virtual currency, contributes to player manipulation because it separates the use of actual cash from spending money on Loot Boxes, "causing players to lose contact with the real value" of the cash spent on Loot Boxes. ¶ 36.

Nor does Apple passively "obtain revenue" from Loot Boxes sales. *See* MTD at 11. Rather, Apple created and controls the exclusive method for purchasing them, and it must be done on an Apple device. ¶¶ 27, 31-34. Loot Box purchases happen through a credit card linked to an Apple

account or through an iTunes gift card that only Apple issues, all without developer involvement. *Id.* and n.5. These allegations go to the heart of Apple's active role in the illegal gambling operations. Gambling involves the wager of "money or coin or any other object, or by any other means ..." Cal. Penal Code § 330b(d). Apple exclusively sells the poker chips currency used to make the wager. By Apple's design, game developers play no role in this.

### 2.   Apple Is a "Content Provider" Under 47 U.S.C. § 230(f)(3)

Under section 230(c):

> A website operator can be both a service provider and a content provider: If it passively displays content that is created entirely by third parties, then it is only a service provider with respect to that content. But as to content that it creates itself, or is "responsible, in whole or in part" for creating or developing, the website is also a content provider.

*Fair Hous.*, 521 F.3d at 1162 (quoting 47 U.S.C. § 230(c)). Apple also provides content.

Advising parents that a game is appropriate for certain age groups when an interactive computer service knows it contains harmful predatory gambling devices falls outside the "traditional editorial functions of a publisher." *Opperman*, 87 F. Supp. 3d at 1044. "[A] website helps to develop unlawful content, and thus falls within the exception to section 230, if it contributes materially to the alleged illegality of the conduct." *Fair Hous.*, 521 F.3d at 1168. Because Apple also is an "information content provider" for Loot Boxes, it is liable. *Id.*

First, Apple requires Loot Box game developers to display in-game the odds of winning Loot Box prizes. ¶¶ 12, 52. "By requiring subscribers to provide the information as a condition of accessing its service, … [Defendant] becomes much more than a passive transmitter of information provided by others; it becomes the developer, at least in part, of that information." *Fair Hous.*, 521 F.3d at 1166.

Second, Apple has created "age-rating" and content descriptions for every game in the App Store and requires App Developers to include the Apple age-rating system. *See, e.g.*, ¶ 44 ("Apple gave [Mario Kart Tour] a 4+ age-rating with a disclosure that it allows 'In-App Purchases.'"); ¶ 48 (FIFA Soccer "is age-rated '4+' with a disclosure that it allows 'In-App Purchases.'"). These ratings and content descriptions are required by Apple and included in Apple's "App Store Preview" of the game. ¶ 82. Parents and gamers are encouraged to rely on this content to determine whether the

game is appropriate. But Apple omits that Loot Boxes are present and that they are gambling devices that carry with them the harms of gambling. ¶¶ 93-95. "Thus, there is no notice—and no requirement of any notice by Apple—to the parent or the child that a game contains Loot Boxes or other gambling mechanisms." ¶ 83. Apple ignores these allegations.

Contrary to the purpose (and title) of 47 U.S.C. § 230(c), Apple is not acting as a Good Samaritan engaged in blocking and screening offensive material. Instead, Apple is the active business partner in an illegal gambling venture.

**B.    Plaintiffs Readily Meet the UCL and CLRA Standing Requirements**

A UCL claim may be brought "by a person who has suffered injury in fact and has lost money or property as a result of the unfair competition." Bus. & Prof. Code § 17204. Any consumer "who has standing under the UCL's [] 'lost money or property requirement' will, *a fortiori*, have suffered 'any damage' for purposes of establishing CLRA standing" under its "capacious" requirement. *Hinojos v. Kohl's Corp.*, 718 F.3d 1098, 1108 (9th Cir. 2013). Apple argues Plaintiffs' UCL and CLRA claims fail because they suffered no injury at its hands. According to Apple, the only transaction was for virtual currency (which "they got exactly") and Plaintiffs could use that currency however they wanted – not just for illegal gambling. MTD at 11-12.

First, there is no requirement that the lost money be tied to a transaction with defendant. A plaintiff must merely allege "an identifiable monetary or property injury." *Kwikset Corp. v. Super. Ct.*, 51 Cal. 4th 310, 325 (2011). Payment of money is a "classic" form of injury in fact which satisfies the lost money or property requirement. *Id.* at 323-24; *see also Clayworth v. Pfizer, Inc.*, 49 Cal. 4th 758, 788-89 (2010) (requirement unrelated to obtaining restitution from defendant). No "benefit of the bargain" exception exists for UCL standing. *Hansen v. Newegg.com Americas, Inc.*, 25 Cal. App. 5th 714, 731 (2018); *see also People ex rel. Harris v. Pac. Anchor Transp., Inc.*, 59 Cal. 4th 772, 783 (2014).

Here, Plaintiffs paid money to purchase something that was illegal. ¶¶ 14, 17, 109 (alleging "as a direct and proximate result of Apple's violations" Plaintiffs "were induced to spend money" on "the random-chance possibility of winning valuable items" by playing Loot Boxes"). Ms. Taylor's "son C.T. has been induced to spend his parents' money and perhaps his own money to

purchase 'Loot Boxes' in-game." ¶ 14. Ms. Taylor estimates C.T. "spent at least $25 on in-game Loot Boxes in exchange for the random-chance possibility of winning valuable items." ¶ 17. These amounts were charged by and paid to Apple. ¶¶ 25-27, 31-33. Nothing more is needed.

Apple's argument that Plaintiffs "got exactly what they paid for – virtual gems," is no defense – it is part and parcel of the offending conduct. Like any casino, Apple requires the gambler to buy chips and then use those chips to place bets. This practice helps distance in the gambler's mind the use of money from the use of chips. ¶¶ 34-36. In the words of gambler Julius "Big Julie" Weintraub, "the guy who invented poker was bright, but the guy who invented the chip was a genius."

Plaintiffs expressly allege that Apple created a system to take advantage of this phenomenon. The only way to buy a chance on a Loot Box is to purchase virtual currency directly from Apple:

- "Payment for…all in-game purchases … (e.g., Loot Boxes), is controlled entirely by Apple. The payments go directly to Apple and, after Apple takes its 30% of the total, the remainder is distributed to the App developer." ¶ 27.
- "Loot Boxes can only be purchased by the consumer through the Apple device." ¶¶ 31-32.
- "Upon pressing the "Purchase" button, the player is prompted to log in to his Apple account by entering the account password. Upon doing so, the amount of the purchase is immediately charged by Apple to the credit card number on file with Apple's App Store." ¶ 33.

Apple relies on an opinion from Maryland, *Mason v. Mach. Zone, Inc.*, 140 F. Supp. 3d 457 (D. Md. 2015), to argue that a plaintiff who receives what was promised (virtual currency) suffers no economic injury under the UCL. MTD at 12. Apple fails to tell the whole story about that case and ignores the controlling law. First, Apple cites *Mason v. Mach. Zone, Inc.*, 851 F.3d 315 (4th Cir. 2017), to suggest that this point of law was affirmed on appeal. It was not. The Fourth Circuit did not analyze any California law because plaintiff only appealed her Maryland statutory claim. *Id.* at 317. In *Kater v. Churchill Downs Inc.*, 886 F.3d 784, 788-89 (9th Cir. 2018), the Ninth Circuit distinguished *Mason* for this reason.

*Mason*, which does not control, concerned a complaint containing a "hodgepodge of hollow claims" that lacked the facts Plaintiffs allege here. Without the allegations of peer-reviewed research and regulatory studies conducted in the last four years, the *Mason* court wrote the case was about

1   "entertainment choices" involving "modest payments" for "play money" in a "pretend" world.

2   Lacking the evidence of real-world harm, it stated: "In closing, the Court expresses its disapproval

3   of lawsuits—like this one—that strain and strain but in the end never credibly allege an injury."

4   *Mason*, 140 F. Supp. 3d at 469 n.20. As regulators around the world have concluded based on peer-

5   reviewed science, the psychological and financial harms caused by Loot Boxes are real. Here, the

6   Complaint details study after study reaffirming the predatory gambling nature of Loot Boxes, which

7   create and encourage addictive behavior. ¶¶ 9-11, 65-80. This research and governmental action

8   post-dates *Mason*, showing *Mason's* holding and rationale to be incorrect.

9       Apple also heavily relies on the false equivalence between baseball card packs and Loot

10  Boxes, and then relies on a trio of opinions about whether selling randomized baseball card packs

11  violates RICO. MTD at 13.[3]

12      First, none of these cases involve the California gaming statutes invoked here. Baseball cards

13  are not "gambling devise.

14
_____

15  [3]     Researchers reject the baseball card analogy. Dr. David Zendle, one of the foremost

16  researchers of Loot Boxes, explained at the FTC's 2019 workshop investigating Loot Boxes why
    the baseball card "parallel" (MTD at 13) is "ludicrous:"

17          I'm increasingly coming to see the baseball card line as a method by which the
            industry, like a stage magician, draws our attention towards something, whilst
18          distracting it from something else.

19          So sure there are similarities. But here's a difference for you. Loot box spending is
            linked to problem gambling. Here are other differences for you. Can you imagine
20          anybody saying that[] about Kinder Eggs?

21          It's a ludicrous argument. We've never determined what's safe before by looking at
            the similarities between it and something else. Say I run a cinema, and I serve Coca-
22          Cola to all my customers. Coca-Cola is a thick, black, viscous liquid, full of energy,
            and I sort of got a great deal [on] engine oil. And I said to you, I know what, I'm just
23          going to swap out the Coca-Cola in people's cups with engine oil because it's similar
            in that it's also a thick, black, viscous liquid.

24          You'd have me arrested. That's never been how things are done. You can't say
25          something is safe because it's similar to something else.

26  *Available at* https://www.ftc.gov/system/files/documents/videos/inside-game-unlocking-consumer-
    issues-surrounding-loot-boxes-session-2/ftc_loot_boxes_workshop_transcript_segment_2.pdf (last
27  visited Oct. 8, 2020). Summarizing testimony, the FTC's Mary Engle noted parallels to baseball
    cards were rejected because unlike Loot Boxes, baseball cards "are not correlated with problem
28  gambling." *Id.*

1    Second, in *Chaset v. Fleer/Skybox Int'l*, the Ninth Circuit addressed whether disappointed

2   purchasers of baseball card packs "suffer[ed] an injury cognizable under RICO" under that facts

3   alleged, but did not examine state law claims. 300 F.3d 1083, 1087 (9th Cir. 2002). Holding that a

4   "mere expectancy interest" was insufficient to confer RICO standing, the Ninth Circuit explained

5   that plaintiffs' "disappointment upon not finding an insert card in the package is not an injury to

6   property" and "[t]hey, therefore, lack standing to sue under RICO." *Id*. In so holding, *Chaset*

7   followed the two other RICO standing opinions cited by Apple, *Price v. Pinnacle Brands, Inc.*, 138

8   F.3d 602, 607 (5th Cir. 1998), and *Major League Baseball Props., Inc. v. Price*, 105 F. Supp. 2d 46,

9   53 (E.D.N.Y. 2000) ("*MLB Props.*"). As *Price* stated, "it does not follow that any injury for which

10  a plaintiff might assert a state law claim is necessarily sufficient to establish a claim under RICO."

11  138 F.3d at 607; *see also MLB Props.*, 105 F. Supp. 2d at 52 (same). Other courts have found that

12  although RICO standing was not adequately alleged, standing under California state law claims for

13  illegal gambling were. *See Dumas v. Major League Baseball Props., Inc.*, 104 F. Supp. 2d 1220,

14  1222-23 (S.D. Cal. 2000).[4] "While Plaintiffs may in fact possess a common law right of redress …

15  [t]he right to redress that Plaintiffs may enjoy under California state law to sue individually for their

16  gambling losses does not equate with the [RICO] standing requirement of § 1964(c)." *Id*.

17    Plaintiffs do not challenge baseball cards and do not allege RICO. As a result of Defendant's

18  conduct, Plaintiffs spent money on illegal gambling. ¶¶ 14-17, 109. Plaintiffs' allegations of an

19  expenditure of money "as a result of the unfair competition" is enough to confer standing.

20    Apple also argues it cannot be culpable because Plaintiffs were free to use the gambling

21  chips it sold "however they liked." MTD at 12. Again, this misses the point. Apple encouraged the

22  use and sold Loot Boxes, which violates California law. That Apple did not force anyone to play a

23  Loot Box changes nothing.

24    At any rate, California courts have repeatedly rejected similar attempts to disguise illegal

25  gambling. As the court held in *Bell Gardens Bicycle Club v. Department of Justice*, 36 Cal. App.

26

---

27  [4]    *Chaset* reviewed *Dumas*, and two other identical district court opinions by the same district
    court judge: *Rodriguez v. Topps Co.*, 104 F. Supp. 2d 1224 (S.D. Cal. 2000) and *Schwartz v. Upper*

28  *Deck Co.*, 104 F. Supp. 2d 1228 (S.D. Cal. 2000).

PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION TO DISMISS CLASS ACTION COMPLAINT

4th 717, 744 (1995): "Nothing in California law permits the Card Clubs to append an illegal lottery onto a legal game and yet be allowed to operate the illegal lottery…[T]he court will inquire, not into the name of the game but into the nature of the game itself, however skillfully disguised, in order to ascertain if it is a prohibited lottery." *See also Holmes v. Saunders*, 114 Cal. App. 2d 389, 390-91 (1952) (illegal lottery where subscriber's purchase price also made him eligible for automobile raffle); *People v. Gonzales*, 62 Cal. App. 2d 274, 278-79 (1944) (same: "cash night" movie theater promotion); *People v. Hecht*, 119 Cal. App. Supp. 778, 784 (1931) (same: "suit club").

Apple next argues it "did not offer loot boxes" or create the game, but merely provided the platform and sold the only currency that could be used to play a Loot Box, so the injuries suffered "cannot plausibly…be tied to any conduct of Apple." MTD at 14. But there is no requirement that Apple must do everything to be liable, just as an unlicensed casino violates the law even if it did not manufacture the slot machine. *See* Penal Code 330b(a) (unlawful to "manufacture, repair, own, store, possess, sell, rent, lease, let on shares, lend or give away, transport, or expose for sale or lease…or permit the operation, placement, maintenance, or keeping of, in any place…any slot machine or device"). California law prohibits everything from manufacturing, possessing, or selling gambling devices to permitting their use or placement in any place. *See* Penal Code section 330b(a).

Without Apple's active role, Plaintiffs and Class members would not have had access to or spent money on the Loot Boxes, which are illegal and should not have been on the market. *See Franz v. Beiersdorf, Inc.*, 745 Fed. Appx. 47, 48 (9th Cir. 2018) (Plaintiff "spent money on a product that should not have been on the market. Those allegations are sufficient to establish standing under the UCL."). That Plaintiffs lost money on illegal gambling was a predictable consequence of Apple's actions. Causation "easily extends" to Apple's own conduct. *See FTC v. Neovi, Inc.*, 604 F.3d 1150, 1157 (9th Cir. 2010) (collecting cases and stating that "Courts have long held that consumers are injured for purposes of [§ 5 of the FTC] Act not solely through the machinations of those with ill intentions, but also through the actions of those whose practices facilitate, or contribute to, ill-intentioned schemes if the injury was a predictable consequence of those actions.").

**C.     Plaintiffs' UCL Unlawful Prong and CLRA Claims are Adequately Pleaded**

"[T]he primary purpose of the unfair competition law ... is to protect the public from

1   unscrupulous business practices." *Consumers Union of U.S., Inc. v. Alta-Dena Certified Dairy,* 4

2   Cal. App. 4th 963, 975 (1992). The UCL imposes strict liability on anyone who violates its

3   prohibitions. The "scope of the UCL is quite broad." *McKell v. Wash. Mut., Inc.*, 142 Cal. App. 4th

4   1457, 1471 (2006). A business practice need only meet one of the statute's three criteria ("unlawful,"

5   "unfair" or "fraudulent") to violate the UCL. *Id.* Here, Plaintiffs allege violations of the UCL's

6   unlawful and unfair prongs, as well as subsection 1770(a)(14) of the CLRA.[5]

7          **1.     Apple Violates California's Gambling Prohibitions**

8          Fifteen pages into its brief, Apple finally arrives at the heart of the issue – whether Loot

9   Boxes are prohibited under California anti-gambling laws. It relies solely on trial court decisions

10  that lacked the benefit of the facts alleged here. These include the high-quality, independent clinical

11  studies finding Loot Boxes carry all the evils of gambling, including addiction, and that these evils

12  are particularly pronounced in the largest target of videogames – teenagers. The Complaint details

13  how Loot Boxes offer a chance to win something of value to the player, which is why so much

14  money is spent in the pursuit of a chance to win the prizes offered. Finding Loot Boxes meet

15  California's definition of gambling fulfills the Legislature's goal of broadly capturing gambling

16  schemes to prevent the problems associated with gambling under Penal Code § 330b.

17         The UCL's unlawful prong is essentially an incorporate-by-reference provision. "By

18  proscribing any unlawful business practice, section 17200 borrows violations of other laws and

19  treats them as unlawful practices that the unfair competition law makes independently actionable."

20  *Cel-Tech Commc'ns, Inc. v. L.A. Cellular Tel. Co.*, 20 Cal. 4th 163, 180 (1999). "With respect to

21  the unlawful prong, '[v]irtually any state, federal or local law can serve as the predicate for an action'

22  under section 17200." *People ex rel. Lockyer v. Fremont Life Ins. Co.*, 104 Cal. App. 4th 508, 515

23  (2002) (emphasis omitted).

24         Penal Code sections 330b and 330.1 define gambling devices and their prohibition.

25

26  _____

27  [5]     Plaintiffs allege Apple violates the CLRA's prohibition against "representing that a
    transaction confers or involves rights, remedies, or obligations that it does not have or involve, or
    that are prohibited by law." ¶ 116 (quoting Cal. Civ. Code § 1770(a)(14)). Apple argues the CLRA

28  subsection fails because Loot Box transactions are not "prohibited by law."

1  California's Bureau of Gambling Control explains these broad sections as follows:

2      California's gambling device statutes are broad in their coverage and prohibit any
       person from owning, renting, or possessing illegal gambling devices. (Penal Code §§
3      330a, 330b, 330.1.) An illegal gambling device has three features:

4      A.  It is a machine, apparatus, or device (coin operation is not required);

5      B.  Something of value is given to play the device; and

6      C.  The player has the opportunity to receive something of value by **any** element of
           hazard or chance ("something of value" is not limited to coins, bills, or tokens—
7          it also includes free replays, additional playing time, redemption tickets, gift
           cards, game credits, or anything else with a value, monetary or otherwise.) (Penal
8          Code, §§ 330a, 330b & 330.1.)

9  ¶¶ 88 (quoting Cal. Bureau of Gambling Control, Law Enforcement Advisory No. 10 "Illegal

10  Gambling Devices," Nov. 1, 2010) (emphasis in original). Apple challenges the first and third

11  elements. It argues Loot Boxes fall within § 330b(f)'s exception for "[p]inball and other amusement

12  machines or devices, which are predominantly games of skill." It then argues Loot Boxes do not

13  offer the chance to win something of value. Apple's arguments fail.

14          a.      The Loot Boxes Are Not "Games of Skill"

15          Apple first asserts Loot Boxes fall within § 330b's exception for "[p]inball and other

16  amusement machines or devices, which are predominantly games of skill." MTD at 15 (citing Cal.

17  Penal Code § 330b(f)). It argues that because the videogames in which Loot Boxes are found require

18  skill, Loot Boxes, which require no skill, should nonetheless be considered skilled games. Like

19  pressing the button on a slot machine, the player simply clicks on the Loot Box to see what

20  randomized prize comes up. ¶ 30. Loot Boxes are the issue here, not the video games in which they

21  are found. *Cf. People ex rel. Green v. Grewal*, 61 Cal. 4th 544, 564 (2015) (That users could use a

22  machine without playing its gambling aspect "does not make the system any less of a slot machine

23  when they do [] play the casino-style game."). Apple again relies on *Mason*. MTD at 17. But in

24  *Mason*, the court erroneously refused to distinguish between the "integrated strategy" video game

25  and the gambling aspects within it. *Id.* ("The game at issue here is not 'Casino'; the game is [Game

26  of War]."). Whether Loot Boxes are found in some games that require skill do not transform Loot

27  Boxes into games of skill. They are purely randomized games of chance where the player simply

28  clicks on the Loot Box to see what randomized prize comes up. ¶¶ 4, 12, 29-30, 42. Further, although

1    irrelevant, Plaintiffs also dispute that many video games constitute "games of skill" under Cal. Penal

2    Code § 330b(d). As the Brussels Gaming Commission points out, the "skill" involved in these games

3    is      simply      an      "illusion."      *Available      at*      https://www.gamingcommission.be

4    /opencms/export/sites/default/jhksweb_nl/documents/onderzoeksrapport-loot-boxen-Engels-

5    publicatie.pdf. (last visited Oct. 8, 2020).

6                    **b.      Loot Boxes Award Randomized "Things of Value"**

7            Conceding Loot Boxes offer prizes that "may have value to the game-player," Apple

8    nonetheless argues the random prizes "are not 'things of value' within the Penal Code because they

9    do not have real-world monetary value outside the game." MTD at 16. But this requirement is not

10   found in the statute. Contrary to Apple's position, the prizes need not be saleable or tradeable and

11   Apple's concession that the prizes "may have value to the game-player" is dispositive. Penal Code

12   § 330b(d) defines an unlawful gambling device expansively, as anything offering random chances

13   to "receive any piece of money, credit, allowance, or thing of value, or additional chance or right to

14   use the slot machine or device..." in return for the payment of a wager. The definition is open-ended,

15   in the disjunctive, and very broad.

16           Under California's gambling laws, a "thing of value" includes a wide variety of tangible and

17   intangible rewards. "[I]t is clear from the statutes themselves that 'gambling' is not limited to the

18   opportunity to win money." *Trinkle v. Stroh*, 60 Cal. App. 4th 771, 785 (1997). Amusement is a

19   thing of value under these statutes. *Merandette v. City & Cty. of S.F.*, 88 Cal. App. 3d 105, 114

20   (1979) (reward of free games constituted a thing of value under § 330b).

21           In *Kater*, issued after the out-of-circuit district court cases upon which Apple relies, the

22   Ninth Circuit rejected the argument that prizes must be redeemable for money or merchandise or

23   otherwise have pecuniary value on their own to be a thing of value. There, defendant's free-to-

24   download gaming app awarded new players with an initial allotment of free virtual chips that could

25   be replenished through in-app purchases or by winning games. *Kater*, 886 F.3d at 785-86. To play

26   the game, defendant required users to accept terms of use "stat[ing] that virtual chips have no

27   monetary value and cannot be exchanged 'for cash or any other tangible value.'" *Id.* at 786.

28   Nevertheless, defendant's virtual chips were a "thing of value" under Washington's similar

**PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION TO DISMISS CLASS ACTION COMPLAINT**

gambling law because they allow a player to "place another wager or re-spin a slot machine," making them a "'credit ... involving extension of a service, entertainment or a privilege of playing at a game or scheme without charge.'" *Id.* at 787 (quoting RCW § 9.46.0285). Cash redemption, pecuniary value, whether the game was free-to-download, and an option to earn the gambling currency were all not required. The virtual nature of the purchased coins did not make them any less purchased. *Id.* at 787-88.

It is notable the definition of "thing of value" under Washington law is narrower than under California law. Under California law, illegal gambling devices are those that randomly entitle users to (1) "money," (2) "credit," (3) "allowance," (4) "thing[s] of value," (5) "additional chance or right to use the slot machine or device," (6) "or any [item], which may be exchanged for any money, credit, allowance, or thing of value." Cal. Penal Code § 330b(d). "Thing of value" under California law is in addition to an award of free game play, money, *et cetera*. The statute does not define "thing of value" as money, credit, allowance, additional chances for play or something that can be sold or bartered. Instead, the broad definition adds "thing of value" to this list.[6]

As alleged, the Loot Boxes randomly award prizes that are of value to the player. ¶¶ 5-6, 17, 38, 46-47, 52, 60, 89-90. Loot Box prizes have real entertainment, hedonic and social value. The bipartisan Senate bill, "The Protecting Children From Abusive Games Act," defines Loot Boxes as "an add-on transaction to an interactive digital entertainment product that in a randomized or partially randomized fashion unlocks a feature of the product or adds to or enhances ***the entertainment value*** of the product." ¶ 80. One prominent value proposition of Loot Box prizes is they afford players to differentiate themselves from other players by personalizing their avatar or other belonging in-game with rare prizes. ¶ 4. Here, where the items contained in Loot Boxes are categorized by frequency and rarity, value is inherently assigned to the items. ¶¶ 5, 41-42, 46, 52, 63.

---

[6]     Apple cites the definition of "thing of value" from Penal Code § 330.2 (MTD at 16), but that definition only applies to "Sections 330.1 to 330.5, inclusive," and not Penal Code § 330b. While sections 330.1 and 330b both prohibit the mere possession (and more) of gambling devices, § 330b is "broad[er]." *Green*, 61 Cal. 4th at 556; *see also* MTD at 15 n.9 (Apple concedes the Penal Code sections are "distinct").

1    Moreover, some of these specific high-demand items in the game can be so difficult (and

2    costly) to obtain that a "gray market" has sprung up on the internet – websites where the game

3    accounts and in some cases individual items can be (and are) bought and sold for real money outside

4    of the game itself. Numerous websites have been created to broker these transactions, bringing buyer

5    and seller together to sell these items and accounts, for real money outside of the game. ¶¶ 6, 90.

6    Loot Boxes offer a chance at things of value, which is why they are so sought-after.

7    Apple asks that the Court follow three out-of-circuit district court opinions that predate *Kater*

8    and were decided without the factual and scientific findings detailed in the Complaint. *Kater*

9    discusses three of the cases, casting them aside as "unpersuasive." *Kater*, 886 F.3d at 788. The first,

10   *Mason*, was discussed above. The second, *Ristic v. Mach. Zone, Inc.*, No. 15-cv-8996, 2016 U.S.

11   Dist. LEXIS 127056 (N.D. Ill. Sept. 19, 2016) involved claims under the Illinois Loss Recovery Act

12   ("ILRA") and the Illinois Consumer Fraud and Deceptive Business Practices Act ("ICFA"). *Id.* at

13   *1. Plaintiff's claims failed under the Illinois statutes because defendant was not the "winner" of

14   plaintiff's gambling loss – a requirement absent from California's statute. *Id.* at *7-9, 11-12. The

15   complaint was dismissed under Illinois law, not California.

16   *Kater* also rejected the third opinion, *Soto v. Sky Union, LLC*, 159 F. Supp. 3d 871 (N.D. Ill.

17   2016). There, the game was found not to be gambling "because players use virtual, valueless

18   currency to participate in Rolls and events with virtual, valueless prizes." *Id.* at 877. *Kater* rejected

19   these facts as irrelevant to the analysis under Washington's gambling laws. California's gambling

20   laws are equivalent to Washington's in this respect. Further, even *Soto* agreed the use of virtual

21   currency could constitute gambling because, as here, real money was used to purchase the virtual

22   currency. *Id.* at 878-79. The court dismissed plaintiff's claims because the prizes did "not have

23   measurable worth, and [] cannot be a 'thing of value.'" *Id.* at 880. *Kater* rejected this assertion.

24   California sweepingly includes any "thing of value." "Measurability" appears nowhere in the

25   statute. Nonetheless, hundreds of millions of dollars are spent on Loot Boxes.

26   Accordingly, the Complaint properly alleges violations of § 330b and so states claims under

27   the UCL's unlawful prong and for violations of section 1770(a)(14) of the CLRA.

28

00169166

### 2.   Apple Violates Federal Gambling Laws

In addition to violating California's anti-gambling laws, Apple's conduct violates federal gambling statutes. ¶¶ 103-04. The Illegal Gambling Business Act (18 U.S.C. § 1955(b)(1)(i)) and Unlawful Internet Gambling Enforcement Act of 2006 (31 U.S.C. §§ 5361, *et seq*.) prohibit gambling that is unlawful under any state or federal law. MTD at 20. Apple's conduct, which violates California's anti-gambling laws, thus violates these federal gambling statutes that also serve as predicate laws for UCL unlawful and CLRA purposes.

### 3.   Apple Violates California's Deceit Statutes

Next, Apple argues that two out of the seven statutes that are the predicates for the unlawful prong must be alleged with more specificity and that scienter cannot exist because Apple "did not develop or create" the games containing Loot Boxes. MTD at 20-22.

First, because other predicate statutory violates are alleged, Plaintiffs state a claim under the unlawful prong of the UCL. Apple's argument should be rejected on this basis alone.

Second, the Complaint's detailed allegations satisfy Rule 9(b) for the very narrow aspects of the UCL claim to which it applies. The Complaint is "specific enough to give [Apple] notice of the particular misconduct…so that [it] can defend against the charge and not just deny that [it has] done anything wrong." *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1106 (9th Cir. 2003). "Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally." Fed. R. Civ. P. 9(b). Plaintiffs specifically alleged when Loot Box purchases were made, how they were made, why they were made, the amount of money spent, Apple's involvement in the conduct alleged, including its knowledge. Indeed, it was done using an Apple account.

And Apple knows Loot Boxes are games of chance. Its App Store Guidelines require "each game developer must somewhere publish the odds of winning a desirable item in any given Loot Box." ¶ 41. Despite its knowledge, the age- and content-ratings it markets "do not contain any disclosures concerning the use of Loot Boxes and gambling." ¶ 82. Apple only makes the misleading partial disclosure that the Loot Box games contain "In-App Purchases." *Id.* Apple's half-truths and concealments fit precisely within California's deceit prohibition, which includes "[t]he suppression of a fact, by one who is bound to disclose it *or* who gives information of other facts which are likely

1    to mislead for want of communication of that fact." Cal. Civ. Code § 1710(3).

2         Plaintiffs also allege reliance. MTD at 21. Plaintiffs allege Apple actively concealed that its

3    games contained Loot Boxes. Reliance is presumed if the misrepresentation or omission is material.

4    *Mass. Mut. Life Ins. Co. v. Super. Ct.*, 97 Cal. App. 4th 1282, 1293 (2002). The representation or

5    omission need not be the "sole or even the decisive cause of the injury-producing conduct." *Kwikset*

6    *Corp. v. Super. Ct.*, 51 Cal. 4th 310, 327 (2011). "Materiality is generally a question of fact unless

7    the fact misrepresented is so obviously unimportant" as to render it immaterial as a matter of law.

8    *Engalla v. Permanente Med. Grp., Inc.*, 15 Cal. 4th 951, 977-78 (1997). "It requires no stretch to

9    conclude that" a "reasonable person would find it important when determining whether to purchase

10   a product that it is unlawful to sell [] that product." *Steroid Hormone Prod. Cases*, 181 Cal. App.

11   4th 145, 157 (2010) (materiality inferred and causation established where class purchased

12   defendant's illegal products); *see also* Cal. Civ. Code § 3548 (presumption of obedience to the law);

13   *McAdams v. Monier, Inc.*, 182 Cal. App. 4th 174, 184 (2010) ("purchases pursuant to [the] alleged

14   failure to disclose … would be sufficient to permit an inference of common reliance among the class

15   on the material misrepresentation comprising the alleged failure to disclose").

16        Last, Apple argues scienter is not alleged and cannot exist because Apple "did not develop

17   or create" the games containing Loot Boxes. Whether Apple developed the games is irrelevant.

18   Moreover, scienter is not required for deceit under Civil Code § 1710(3). *See L.A. Unified Sch. Dist.*

19   *v. Great Am. Ins. Co.*, 49 Cal. 4th 739, 750 n.5 (2010) (sections 1710(2) and (3) "allow[] recovery

20   in the absence of scienter or intent to defraud").

21        **D.    Plaintiffs' CLRA Claim is Adequately Alleged and Also Constitutes a Predicate**
             **Violation of the UCL**

22

23        Apples argues Plaintiffs' CLRA claim fails as an independent cause of action and as a

24   predicate violation for the UCL's unlawful prong. MTD at 22. Apple makes two arguments. First,

25   Apple repeats its argument there was no violation of California gambling laws and therefore posits

26   there can be no violation of subsection (a)(14) of the CLRA for transactions "prohibited by law."

27   As discussed above, the Loot Boxes constitute illegal gambling.

28        Second, Apple argues "the virtual currency used to buy loot boxes are not 'goods or services'

                                                    19                      Case No. 5:20-cv-03906-RS

under the CLRA. MTD at 22 (citing Cal. Civ. Code § 1770(a)). As Apple's own Media Services Terms and Conditions confirm, Apple provides services to consumers.

The CLRA broadly defines "services" to include any "services for other than a commercial or business use." Cal. Civ. Code § 1761(b). In the Apple Media Services Terms and Conditions, on which Apple relies for this motion, Apple admits its services include selling the Loot Boxes: "[t]his Agreement governs your use of Apple's services ('Services'), through which you can buy, get, license, rent or subscribe to content, apps ('Apps'), and other in-app services." ECF No. 24-2 at 1.

The services Apple provides include "marketing, selling, and/or distributing the games to kids on Apple products and through its App Store platform" (¶ 13), and "plac[ing] the developers' apps on the virtual shelves of its App Store, sell[ing] them directly to Apple iPhone, iPad and other hardware customers, charg[ing] and collect[ing] the full price [] from customers, keep[ing] its 30% of the customer payment from every sale or license, and then remit[ting] the balance of the purchase price to the developer" (¶ 26). The "[p]ayment for the Apps, including all in-game purchases after the game is downloaded by the consumer (e.g., Loot Boxes), is controlled entirely by Apple. The payments go directly to Apple and, after Apple takes its 30% of the total, the remainder is distributed to the App developer." ¶ 27. Apple also provides quality control services to consumers by "control[ling] which Apps are allowed in the App Store, and maintain[ing] strict requirements and guidelines for App developers who want to distribute an App via the App Store." ¶ 24.

Apple's App Store is the casino. Without it, no one could pay for or play Loot Boxes on an Apple device. Just like a casino does not make slot machines, but provides the infrastructure and services needed to play them, Apple provides the App Store and the attendant services for Loot Box play. Penal Code § 330a(a) includes in its prohibitions "[e]very person, who has in his or her possession or under his or her control, either as owner, lessee, agent, employee, mortgagee, or otherwise ... any [gambling] contrivance." Penal Code § 330b(a) likewise makes it "unlawful for any person to make or to permit the making of an agreement with another person regarding any [gambling] device." Apple falls squarely within these prohibitions when it provides its services through the App Store.

As alleged, Apple's control over all the services it provides in the App Store is absolute. ¶¶

20

24-27. In fact, Apple recently removed "Fortnite," one of the world's most popular games, from the App Store when the game's developer implemented a direct-payment option to bypass the 30% fee Apple collects through the App Store. *See, e.g., Epic Games, Inc. v. Apple Inc.*, No. 4:19-cv-03074-YGR (N.D. Cal.), ECF No. 1 (Complaint for Injunctive Relief), ¶ 7 ("Through its control over iOS … and restrictions that it forces app developers to accept" Apple "prevents iOS users from downloading any apps from any source other than Apple's own storefront, the App Store."), ¶ 10 ("Apple coerces all app developers who wish to use its App Store—the only means with which to distribute apps to iOS users—to use exclusively Apple's own payment processing platform for all in-app purchases of in-app content.").

In *In re Yahoo! Inc. Customer Data Sec. Breach Litig.*, 313 F. Supp. 3d 1113, 1141-42 (N.D. Cal. 2018), Judge Koh rejected the very argument Apple makes here in holding the CLRA applies. The court explained:

> Plaintiffs have signed up for accounts on a web-based platform, maintained by Yahoo, where they can engage in activities ranging from private email communication to bank and stock trading to photo storage. *Id.* That Yahoo continually upkeeps and updates the system further solidifies that Yahoo is providing a "service," i.e., "work, labor, and services for other than a commercial or business use." Cal. Civ. Code § 1761(b). Moreover, as noted above, the FAC's repeated labeling of Yahoo's offerings as "services" is supported by the fact that Yahoo itself has Terms of Service and defines "Yahoo! Services" as including "communications tools, forums, shopping services, search services, personalized content and branded programming."…Thus, Plaintiffs have adequately pled that Yahoo provides a "service" that is subject to the CLRA.

*Id.* at 1142; *see also Zaragoza v. Apple Inc.*, No. 18-cv-06139, 2019 U.S. Dist. LEXIS 40916 at *15 (N.D. Cal. Mar. 13, 2019) (involving iTunes purchases on Apple TV as services).

Apple has charged consumers many millions of dollars to play Loot Boxes, which are transactions prohibited by law. Plaintiffs state a CLRA claim.

## E.   Apple's Conduct Violates the UCL's Unfair Prong

Dismissively stating again that all it does is sell currency, Apple argues Plaintiffs' UCL unfair claims fail under any of the three applicable tests. Plaintiffs challenge the selling of games of chance in violation of California law and policy. Without Apple, the developer could not sell Loot Boxes to Apple's customers. Like a casino, it does not make the slot machine, but it makes playing

1    the slot machine possible, keeping 30% for its efforts. ¶¶ 24-27, 31-33. These allegations properly

2    form the basis for UCL unfair claims under all three tests: the balancing test, the *Cel-Tech* tethering

3    test, and the FTC Act three-prong test.

4         "A business practice is unfair within the meaning of the UCL if it violates established public

5    policy or if it is immoral, unethical, oppressive or unscrupulous and causes injury to consumers

6    which outweighs its benefits." *McKell*, 142 Cal. App. 4th at 1473; *see also Nationwide Biweekly*

7    *Admin., Inc. v. Super. Ct.*, 9 Cal. 5th 279, 303 n.10 (2020) ("determination whether a business

8    practice is unfair to consumers involves an examination of [that practice's] impact on its alleged

9    victim, balanced against the reasons, justifications and motives of the alleged wrongdoer."); *Frank*

10   *v. J.P. Morgan Chase Bank, N.A.*, No. 15-cv-05811, 2016 U.S. Dist. LEXIS 70879, at *23-24 (N.D.

11   Cal. May 31, 2016) (discussing the three unfairness tests in consumer cases). The unfair prong is

12   "intentionally broad, thus allowing courts maximum discretion ...." *Schnall v. Hertz Corp.*, 78 Cal.

13   App. 4th 1144, 1166 (2000). "In permitting the restraining of all 'unfair' business practices," the

14   UCL "undeniably establishes only a wide standard to guide courts of equity ... given the creative

15   nature of the scheming mind, the Legislature evidently concluded that a less inclusive standard

16   would not be adequate." *Cel-Tech.*, 20 Cal. 4th at 181. The unfair prong does not require a statutory

17   violation; "on the contrary… the UCL is independent of other statutes, and prohibits unfair practices

18   not otherwise unlawful." *Safeway, Inc. v. Super. Ct.*, 238 Cal. App. 4th 1138, 1157 (2015) (Labor

19   Code violations not required for employment practices to be considered unfair). Thus, Apple's

20   conduct may violate the UCL's unfair prong even if selling Loot Boxes does not constitute a

21   technical violation of California's gambling laws because the practice violates a well-establish

22   public policy to protect people, including minors, from the dangers of gambling. The determination

23   of whether a challenged practice is "unfair" is a question of fact not usually made at the pleading

24   stage. *Williams v. Gerber Prods. Co.*, 523 F.3d 934, 939 (9th Cir. 2008); *Progressive W. Ins. Co. v.*

25   *Super. Ct.*, 135 Cal. App. 4th 263, 287 (2005) (the unfair prong is "fact intensive and is not

26   conducive to resolution at the demurrer stage").

27         Apple violates the unfair prong because it engages in an activity that is against public policy

28   and prohibited by law. In the Gambling Control Act, the California legislature declared "[g]ambling

can become addictive and is not an activity to be promoted or legitimized as entertainment for children and families. Bus. & Prof. Code § 19801(c). "Unregulated gambling enterprises are inimical to the public health, safety, welfare, and good order." Bus. & Prof. Code § 19801(d). Thus, "[a]ll gambling operations, all persons having a significant involvement in gambling operations, all establishments where gambling is conducted, and all manufacturers, sellers, and distributors of gambling equipment must be licensed and regulated to protect the public health, safety, and general welfare of the residents of this state as an exercise of the police powers of the state." Bus. & Prof. Code § 19801(i).

As detailed in the Complaint, Loot Boxes have proven detrimental impacts on children and adults, just like other gambling devices because Loot Boxes are a form of gambling. ¶¶ 2, 7, 9-11, 71-76. Apple has no legitimate business reason for promoting this illegal and unscrupulous activity (and offers none) because promoting illegal activity never constitutes a legitimate business activity. It merely asserts that certain places have not yet passed legislation specifically prohibiting all Loot Boxes. MTD at 23 n.20.[7] *See also Pirozzi v. Apple, Inc.*, 966 F. Supp. 2d 909, 922 (N.D. Cal. 2013) (refusing to dismiss UCL unfair claims where "Apple offers nothing in the way of 'reasons, justifications, or motives,' or 'utility of its conduct,' to weight against the alleged harm"); *In re iPhone Application Litig.*, 844 F. Supp. 2d 1040, 1073 (N.D. Cal. 2012) ("at this [motion to dismiss] juncture the court cannot say that Apple's practices are not injurious to consumers, or that any

---

[7]     Contrary to Apple's footnote 20, the fact that California has not passed a Loot Box statute when its existing laws suffice do not indicate legislative approval. Apple misleadingly states Australia and the United Kingdom determined Loot Boxes are not gambling. This is false. While Australia has not yet declared all Loot Boxes illegal gambling, in a February 2020 official report titled "Protecting the age of innocence," the regulators recommended banning Loot Box sales to minors "given their resemblance to gambling" and "the potential for loot boxes to act as a gateway to problem gambling and associated harms later in life." *Available at* https://parlinfo.aph.gov.au/parlInfo/download/committees/reportrep/024436/toc_pdf/Protectingthe ageofinnocence.pdf;fileType=application%2Fpdf#page=7&zoom=100,53,84. On July 2, 2020, the UK's House of Lords published a report titled "Gambling Harm—Time for Action" recommending that Loot Boxes be classified as gambling noting the academic research proving a connection "between loot box spending and problem gambling." "We echo the conclusions of the Children's Commissioner's report, that if a product looks like gambling and feels like gambling, it should be regulated as gambling." *Available at* https://publications.parliament.uk/pa/ ld5801/ldselect/ldgamb/79/79.pdf (last visited Oct. 8, 2020).

1  benefit to consumers outweighs the harm").

2        Apple's conduct is also unfair because it violates section 5 of the FTC Act. In *FTC v. R.F.*

3  *Keppel & Bros., Inc.*, 291 U.S. 304, 308 (1934), the Supreme Court held that selling boxes of candy

4  with the chance at a random prize (e.g., additional pieces of candy or a package with pencils,

5  penholder and ruler) was an unfair method of competition within the meaning of the FTC Act

6  because it constituted illegal "lottery or gambling device which encourages gambling by children."

7  In *Keppel*, "children, entice[d] by the element of chance, purchase[d] candy so sold in preference to

8  straight goods candy" that was larger in size, but without a random prize. The marketing practices

9  found to violate the FTC Act in *Keppel* are strikingly similar to those utilized by Apple: both were

10 directed at minors and required the payment of consideration to participate in a randomized chance

11 opportunity to obtain a valuable prize.

12       Apple closes by arguing the injury could have "easily" been avoided. MTD at 24. This

13 "blame the children" argument is irrelevant. Plaintiffs sufficiently allege unfair prong violations.

14       **F.**     **Plaintiffs Adequately Allege Unjust Enrichment**

15       Apple argues "unjust enrichment" is not an independent cause of action under California

16 law, and if it is, that is just a "minority view." MTD at 24. Not so. The Ninth Circuit explicitly found

17 that unjust enrichment can be a claim under California law when interpreting a 2015 decision by the

18 California Supreme Court. *Bruton v. Gerber Prods. Co.*, 703 Fed. Appx. 468, 470 (9th Cir. 2017)

19 (citing *Hartford Cas. Ins. Co. v. J.R. Mktg., LLC*, 61 Cal. 4th 988, 1000 (2015)); *see also Williams*

20 *v. Facebook, Inc.*, 384 F. Supp. 3d 1043, 1057 (N.D. Cal. 2018); *Yothers v. JFC Int'l, Inc.*, No. 20-

21 cv-01657, 2020 U.S. Dist. LEXIS 156470, at *16 (N.D. Cal. May 14, 2020) ("[T]he California

22 Supreme Court has recently clarified that standalone unjust enrichment claims are permitted under

23 California law."); *Deutsch v. Cook*, No. 1:19-cv-00281, 2020 U.S. Dist. LEXIS 34572, at *12 (E.D.

24 Cal. Feb. 28, 2020) (Given *Bruton* "the court rejects defendant's argument that unjust enrichment is

25 not a viable claim as a matter of law."); *In re Solara Med. Supplies, LLC Customer Data Sec. Breach*

26 *Litig.*, No. 3:19-cv-2284, 2020 U.S. Dist. LEXIS 80736, at *18-19 (S.D. Cal. May 7, 2020) (same);

27 *Rosenthal & Rosenthal of Cal., Inc. v. Hilco Trading, LLC*, No. 2:19-cv-10315, 2020 U.S. Dist.

28 LEXIS 87219, at *28-29 (C.D. Cal. Apr. 14, 2020) (same).

1    Apple then argues the elements of unjust enrichment are not adequately alleged. "The

2    elements for a claim of unjust enrichment are receipt of a benefit and unjust retention of the benefit

3    at the expense of another." *Prakashpalan v. Engstrom, Lipscomb & Lack*, 223 Cal. App. 4th 1105,

4    1132 (2014). Plaintiffs allege Apple received money directly from them personally, as well as class

5    members, for the purpose of gambling. These allegations adequately support an unjust enrichment

6    claim. ¶¶ 27, 109, 126-27.

7    Apple claims it "receives no benefit." MTD at 24. Plaintiffs allege Apple takes a 30% cut of

8    every Loot Box purchase, earning billions of dollars. ¶¶ 13, 25, 27. Apple's point seems to be that

9    the Loot Box purchase and opening occurs "in-game" and Apple is therefore not in privity with the

10   gamer. But privity is not a requirement for unjust enrichment. *See, e.g., Philpott v. Super. Ct.*, 1 Cal.

11   2d 512, 521-22 (1934) (privity not required "to prevent A's unjust enrichment at B's expense");

12   *Process Specialties, Inc. v. Sematech, Inc.*, No. S-00-414N, 2001 U.S. Dist. LEXIS 26261, at *63

13   (E.D. Cal. Nov. 8, 2001) ("[T]here is no [privity] requirement under California law."). Because

14   Plaintiffs sufficiently pled an unjust enrichment claim by showing Defendant unjustly retained a

15   benefit at the expense of Plaintiffs, Defendant's Motion should be denied.[8]

16   **V.    CONCLUSION**

17   For the foregoing reasons, Plaintiffs respectfully request the Court deny Defendant's motion

18   to dismiss in its entirety. If the Court grants any aspect of Defendant's motion, Plaintiffs request

19   leave to amend. *Yagman v. Garcetti*, 852 F.3d 859, 863 (9th Cir. 2017).

Respectfully submitted,

20

21   Dated: October 8, 2020                     BLOOD HURST & O'REARDON, LLP

22                                              By:        *s/ Timothy G. Blood*

23                                                   TIMOTHY G. BLOOD

24   _____

     [8]    In a footnote, Apple argues Plaintiffs' claims for equitable relief under the UCL, CLRA and

25   for unjust enrichment fail because Plaintiffs "(1) can recover damages under the CLRA [and] (2)
     cannot show that damages are inadequate here." MTD at 25 n.23 (citing *Sonner v. Premier Nutrition*

26   *Corp.*, 962 F.3d 1072, 1081 (9th Cir. 2020)). The Ninth Circuit has subsequently disagreed. *See*
     *Moore v. Mars Petcare US, Inc.*, 966 F.3d 1007, 1021 n.13 (9th Cir. 2020) ("Defendants' argument

27   that Plaintiffs cannot seek equitable relief under the UCL or FAL, given an adequate legal remedy
     under the CLRA, is foreclosed by statute. The UCL, FAL and CLRA explicitly provide that

28   remedies under each act are cumulative to each other.").

1

2
THOMAS J. O'REARDON II (247952)
501 West Broadway, Suite 1490
3
San Diego, CA  92101
Tel: 619/338-1100
4
619/338-1101 (fax)
tblood@bholaw.com
5
toreardon@bholaw.com

6
THE LAW OFFICES OF ANDREW J. BROWN
ANDREW J. BROWN (160562)
7
501 West Broadway, Suite 1490
San Diego, CA  92101
8
Tel: 619/501-6550
andrewb@thebrownlawfirm.com

9
*Attorneys for Plaintiffs*

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

00169166
PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION TO DISMISS CLASS ACTION COMPLAINT

1

**CERTIFICATE OF SERVICE**

2

      I hereby certify that on October 8, 2020, I electronically filed the foregoing with the Clerk

3

of the Court using the CM/ECF system which will send notification of such filing to the e-mail

4

addresses denoted on the Electronic Mail Notice List, and I hereby certify that I have mailed the

5

foregoing document or paper via the United States Postal Service to the non-CM/ECF participants

6

indicated on the Electronic Mail Notice List.

7

      I certify under penalty of perjury under the laws of the United States of America that the

8

foregoing is true and correct. Executed on October 8, 2020.

9

10

                           *s/  Timothy G. Blood*
                            TIMOTHY G. BLOOD

11

12

BLOOD HURST & O'REARDON, LLP
501 West Broadway, Suite 1490
San Diego, CA  92101
Tel: 619/501-6550
tblood@bholaw.com

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

00169166