LAURA LEIGH GEIST (SBN 180826)
laura.geist@dentons.com
ANDREW S. AZARMI (SBN 241407)
andrew.azarmi@dentons.com
ANNE E. WADDELL (SBN 311388)
anne.waddell@dentons.com

DENTONS US LLP
1999 HARRISON STREET
SUITE 1300
OAKLAND, CA 94612-4709
Telephone:    415 882 5000
Facsimile:    415 882 0300

Attorneys for Defendant Apple Inc.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO

|  |  |
|---|---|
| REBECCA TAYLOR, and C.T., a minor by REBECCA TAYLOR, C.T.,'s parent and guardian, on behalf of themselves and all others similarly situated,<br><br>　　　　　　Plaintiff,<br><br>　　v.<br><br>Apple Inc.,<br><br>　　　　　　Defendant. | Case No. 3:20-CV-03906-RS<br><br>**APPLE INC.'S NOTICE OF RECENT DECISION IN SUPPORT OF ITS MOTION TO DISMISS**<br><br>Date:　　October 1, 2020<br>Time:　　1:30 p.m.<br>Dept:　　Courtroom 3, 17th Floor<br>Judge:　　The Hon. Richard Seeborg<br><br>Complaint filed: June 12, 2020<br>Trial Date: None set. |

## STATEMENT OF RECENT DECISION

Pursuant to Civil Local Rule 7-3(d)(2), Defendant respectfully submits the following Statement of Recent Decision in support of its pending Motion to Dismiss (the "Motion").  ECF 24.

On February 10, 2021, the Honorable Beth Labson Freeman of the Northern District of California issued a decision captioned *Coffee, et al. v. Google, LLC*, No. 5:20-cv-03901-BLF, in which the court GRANTED defendant Google's motion to dismiss the complaint with leave to amend.  This judicial opinion was published after the Motion was fully briefed and argued by counsel, and a true and correct copy is attached hereto as **Exhibit A**.

Dated:  February 11, 2021

Respectfully submitted,

DENTONS US LLP

By: /s/ Laura Geist
Laura Leigh Geist

Attorneys for Defendant
APPLE INC.

DENTONS US LLP
1999 HARRISON STREET, SUITE 1300
OAKLAND, CALIFORNIA 94612
(415) 882-5000

# Exhibit A

United States District Court
Northern District of California

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

**SAN JOSE DIVISION**

| | |
|---|---|
| JOHN COFFEE, MEI-LING MONTANEZ, AND S.M., a minor by MEI-LING MONTANEZ, S.M.'S parent and guardian, on behalf of themselves and all others similarly situated,<br><br>            Plaintiffs,<br><br>      v.<br><br>GOOGLE, LLC,<br><br>            Defendant. | Case No.  20-cv-03901-BLF<br><br>ORDER GRANTING MOTION TO DISMISS COMPLAINT WITH LEAVE TO AMEND<br><br>[Re:  ECF 17] |

In this putative nationwide class action, Plaintiffs allege that Loot Boxes – a feature of certain video games – constitute illegal "slot machines or devices" under California's gambling laws.  Compl. ¶ 7, ECF 1.  Loot Boxes may be purchased during game play, using virtual currency.  Each Loot Box offers a randomized chance at receiving an item designed to enhance game play, such as a better weapon, faster car, or more desirable player appearance ("skin").  Plaintiffs characterize buying a Loot Box as "a gamble, because the player does not know what the Loot Box actually contains until it is opened."  Compl. ¶ 4.

Defendant Google, LLC operates the Google Play store from which software applications ("apps"), including video games containing Loot Boxes, may be downloaded.  Google does not create the video game apps or Loot Boxes.  Plaintiffs nonetheless allege that Google violates state consumer protection laws by offering video games containing Loot Boxes in its Google Play store and profiting from in-app purchase of Loot Boxes.

Google moves to dismiss the complaint under Federal Rule of Civil Procedure 12(b)(6), arguing that it is immune from liability under Section 230 of the Communications Decency Act of 1996 ("CDA"), 47 U.S.C. § 230; Plaintiffs' core premise that Loot Boxes are illegal under California's gambling laws lacks merit; and Plaintiffs have not alleged essential elements of their claims. Plaintiffs oppose dismissal. The Court has considered the briefing, oral argument, and relevant legal authorities.

The motion to dismiss is GRANTED WITH LEAVE TO AMEND.

## I.   BACKGROUND

Plaintiffs are John Coffee ("Coffee"), Mei-Ling Montanez ("Montanez"), and Montanez's minor son, S.M. Coffee is a citizen and resident of California, while Montanez and S.M. are citizens and residents of New York. Compl. ¶¶ 14-16, ECF 1. Although the complaint describes numerous video games, only two are identified as having been downloaded from the Google Play store by Plaintiffs. Coffee downloaded Final Fantasy Brave Exvius ("Final Fantasy") from the Google Play store onto his Android mobile device in 2018. Compl. ¶ 14. S.M. downloaded Dragon Ball Z Dokkan Battle ("Dragon Ball Z") from the Google Play store onto a Samsung smartphone in 2019. Compl. ¶ 16.

Final Fantasy, the app downloaded by Coffee, is a free "role-playing game where players command their characters to attack and move through a series of stages until they encounter and defeat the boss." Compl. ¶ 66. Within the game, virtual currency called "Lapis Crystals" may be used to "summon" a single, randomized character. Compl. ¶ 67. "Summons are the in-game Loot Boxes that offer random rewards and characters." *Id.* "The best characters are the most rare and difficult to get in the summons." *Id.* Players may obtain the Lapis Crystals necessary to buy a summons either as a reward for game play or by purchasing them with real money. Compl. ¶¶ 13, 67-68. Coffee allegedly was "induced to spend money to purchase 'Loot Boxes' in-game" while playing Final Fantasy and other video games. Compl. ¶ 14. "Coffee estimates he has spent in excess of $500 on in-game Loot Boxes." *Id.*

Dragon Ball Z, the app downloaded by S.M., "is a free-to-play mobile game based on the Dragon Ball anime franchise and television series." Compl. ¶ 72. "The main game is made up of

levels that work similarly to board games, with spots dedicated to items, power-ups, traps, and fights."  Compl. ¶ 73.  "Gamers can unlock new characters with 'Summons,' which are the in-game Loot Boxes that offer random rewards and characters."  *Id.*  "The best characters are most rare and difficult to get in the Summons."  *Id.*  Players must use virtual currency called "dragon stones" to purchase summons.  *Id.*  Dragon stones may be earned through game play or purchased with real money.  Compl. ¶ 74.  S.M. allegedly "has been induced to spend his parents' money to purchase 'Loot Boxes' in-game" while playing Dragon Ball Z.  Compl. ¶ 17.  "Montanez estimates S.M. has spent more than $100 on in-game purchases including Loot Boxes."  Compl. ¶ 18.

"Google does not itself create these games and the Loot Box mechanism."  Compl. ¶ 13.  Most of the video games available for download from the Google Play store are free, including the two apps downloaded by Plaintiffs.  Compl. ¶¶ 24, 66, 72.  Plaintiffs allege that Google nonetheless profits from apps containing Loot Boxes because "[p]ayment for the Apps, including all in-game purchases after the game is downloaded by the consumer (e.g., Loot Boxes), is controlled entirely by Google."  Compl. ¶ 28.  Plaintiffs allege that payments for in-game purchases are made "[u]sing Google Play's payment system, the payments go directly to Google and, after Google takes its 30% of the total, the remainder is distributed to the App developer."  *Id.*  Thus, according to Plaintiffs, "for every Loot Box sale in a game downloaded from the Google Play store, Google receives 30% of the revenue before the developer gets any money at all."  *Id.*

These and other allegations suggest that players buy Loot Boxes directly from Google with real money.  *See, e.g.,* Compl. ¶ 4 ("Loot Boxes are purchased using real money").  However, the complaint makes clear that Loot Boxes may be purchased only in-game, and only with virtual currency.  *See* Compl. ¶¶ 67 (alleging that in Final Fantasy a summons must be purchased with virtual currency called Lapis Crystals), 73 (alleging that in Dragon Ball Z "Summons can only be purchased with the in-game currency, called 'dragon stones'").  Reading the complaint as a whole, the Court understands Plaintiffs to allege that players may use Google Play's payment system to buy virtual currency from an app developer; Google takes a 30% commission and transmits the remainder of the purchase price to the app developer; and the virtual currency then may be used

3

for in-app purchases of items such as Loot Boxes.  *See* Compl. ¶¶ 26-28, 67, 73.

Plaintiffs assert that "Google's predatory Loot Box scheme" entices consumers, including children, to engage in gambling and similar addictive conduct.  Compl. ¶¶ 1, 18.  According to Plaintiffs, "Loot Boxes have all the hallmarks of a Las Vegas-style slot machine, including the psychological aspects to encourage and create addiction – especially among adolescents."  Compl. ¶ 7.  In fact, Plaintiffs assert that under California law Loot Boxes "constitute illegal 'slot machines or devices' when played on a mobile phone, tablet, computer, or other similar device." *Id.*  Plaintiffs allege that "Governments, regulators, and psychologists all agree that Loot Boxes, like the ones in games Defendant offers through its Google Play store, operate as gambling devices for those that play the game, including minors, and that they create and reinforce addictive behaviors."  Compl. ¶ 8.  Comparing Google's conduct to the "Joe Camel" advertising campaign, Plaintiffs contend that "Google relies on creating addictive behaviors in kids to generate huge profits for the Company."  Compl. ¶ 2.

Plaintiffs assert three state law claims against Google:  (1) unlawful and unfair business practices in violation of California's Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code § 17200, *et seq.*; (2) unfair and deceptive acts and practices in violation of California's Consumers Legal Remedies Act ("CLRA"), Cal. Civ. Code § 1750, *et seq.*; and (3) unjust enrichment under unspecified state law.  Google seeks dismissal of all three claims under Rule 12(b)(6).

## II.    LEGAL STANDARD

"A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief can be granted tests the legal sufficiency of a claim."  *Conservation Force v. Salazar*, 646 F.3d 1240, 1241-42 (9th Cir. 2011) (quotation marks and citation omitted).  While a complaint need not contain detailed factual allegations, it "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  A claim is facially plausible when it "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id.*  When evaluating a Rule 12(b)(6) motion, the district court is limited to the allegations of the complaint, documents incorporated into the complaint by

4

reference, and matters which are subject to judicial notice.  *See Louisiana Mun. Police Employees'
Ret. Sys. v. Wynn*, 829 F.3d 1048, 1063 (9th Cir. 2016) (citing *Tellabs, Inc. v. Makor Issues &
Rights, Ltd.*, 551 U.S. 308, 322  (2007)).

## III.   DISCUSSION

Google disputes Plaintiffs' characterization of Loot Boxes as illegal slot machines or
devices under California's gambling laws.  However, Google argues that the Court need not reach
the legality of Loot Boxes in order to grant the motion to dismiss, because Google is immune from
liability under Section 230 of the CDA.  Google also asserts that Plaintiffs have not alleged
essential elements of their claims.  In opposition, Plaintiffs argue that Google is not immune from
liability under the CDA, that Loot Boxes constitute illegal slot machines or devices under
California law, and that all claims in the complaint are adequately alleged.

At the hearing, the Court indicated that it would dismiss the complaint on immunity
grounds under Section 230 of the CDA, with leave to amend, and that it might defer to a later
stage of the proceedings the question of whether Loot Boxes constitute illegal gambling devices.
That question presents several thorny issues, the resolution of which could have a profound impact
on video games, developers, and players.  The Court concludes that it would be imprudent to
address those issues on the scant record before it, particularly when all claims in the complaint are
subject to dismissal on other grounds.  For purposes of the present motion, it is unnecessary to
determine whether Loot Boxes are illegal slot machines or devices under California's gambling
laws.[1]

Accordingly, the Court limits its evaluation of the motion to Google's arguments that it is
entitled to immunity under the CDA and that Plaintiffs have not alleged essential elements of their
claims.  Before taking up those arguments, however, the Court addresses the parties' requests for
judicial notice.

---

[1] The Court's decision to defer consideration of issues relating to Loot Boxes' alleged illegality
does not preclude Plaintiffs from amending their allegations regarding illegality, with the *caveat*
that Plaintiffs may not add new claims or parties absent prior leave of the Court.  At the hearing,
the Court and counsel engaged in a robust discussion of Plaintiffs' theory of the case, and
Plaintiffs' counsel indicated that additional facts could be alleged on the question of illegality.

United States District Court
Northern District of California

**A.     Judicial Notice**

Under Federal Rule of Evidence 201(b), the Court can take judicial notice of any fact that is "not subject to reasonable dispute because it . . . can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b). Both parties request that the Court take judicial notice of certain of Google's terms of service.

**1.     Google's Request**

Google asks the Court to take judicial notice of the Google Play Terms of Service, and in particular language prohibiting the sale or transfer of game content. *See* Michaud Decl. Ex. A (Google Play Terms of Service) § 4 (Rights and Restrictions), ECF 17-2. Google offers this language in response to Plaintiffs' allegation that high-demand Loot Box items may be considered so valuable that they are bought and sold outside the game in a "gray market." *See* Compl. ¶ 6. Plaintiffs oppose Google's request for judicial notice, arguing that Google is asking the Court to accept the Google Play Terms of Service as proof that gamers cannot sell Loot Box items outside the game. Plaintiffs argue that Google is relying on the document to prove the truth of the matters asserted therein, which is not an appropriate use of judicial notice. Plaintiffs dispute Google's assertion that the Google Play Terms of Service are incorporated by reference into the complaint, pointing out that Google cites to a paragraph of the complaint mentioning the Google Terms of Service, not the Google Play Terms of Service. *See* Compl. ¶ 22. In reply, Google asserts that it does not rely on the Google Play Terms of Service to prove that players do not trade game items in a gray market, but it does seek to show that such trading is prohibited under the governing terms of service.

Other courts in this district have found it appropriate to take judicial notice of Google's public terms of service. *See Matera v. Google Inc.*, No. 15-CV-04062-LHK, 2016 WL 8200619, at *5 (N.D. Cal. Aug. 12, 2016). Plaintiffs do not dispute the authenticity or accuracy of the copy of the Google Play Terms of Service submitted to the Court. Accordingly, Google's request for judicial notice as to the existence and contents of the Google Play Terms of Service is GRANTED.

### 2. Plaintiffs' Request

Plaintiffs request judicial notice of the Google Terms of Service. Specifically, Plaintiffs ask the Court to take notice of language providing that "California law will govern all disputes arising out of or relating to these terms, service-specific additional terms, or any related services, regardless of conflict of laws rules," and that "[t]hese disputes will be resolved exclusively in the federal or state courts of Santa Clara County, California, USA." Blood Decl. Exh. A (Google Terms of Service) at 12, ECF 28-2. Plaintiffs point out that the Google Terms of Service are expressly referenced in the complaint. *See* Compl. ¶ 22. Google does not oppose Plaintiffs' request. Under the reasoning set forth above with respect to Google's request for judicial notice, Plaintiffs' request for judicial notice of the Google Terms of Service is GRANTED.

## B. Section 230 of the CDA

Google argues that it is immune from liability under Section 230 of the CDA. Plaintiffs contend that Google is not entitled to immunity under Section 230.

### 1. Applicable Law

Section 230 of the CDA "protects certain internet-based actors from certain kinds of lawsuits." *Barnes v. Yahoo!, Inc.*, 570 F.3d 1096, 1099 (9th Cir. 2009), *as amended* (Sept. 28, 2009). As relevant here, Section 230(c)(1) provides that "[n]o provider or user of an interactive computer service shall be treated as the publisher or speaker of any information provided by another information content provider." 47 U.S.C. § 230(c)(1). "No cause of action may be brought and no liability may be imposed under any State or local law that is inconsistent with this section." 47 U.S.C. § 203(e)(3).[2]

"The majority of federal circuits have interpreted the CDA to establish broad federal immunity to any cause of action that would make service providers liable for information originating with a third-party user of the service." *Perfect 10, Inc. v. CCBill LLC*, 488 F.3d 1102, 1118 (9th Cir. 2007) (quotation marks and citation omitted). The Ninth Circuit has characterized

---

[2] Section 230's protection also extends to federal law claims. *See Fair Hous. Council of San Fernando Valley v. Roommates.Com*, 521 F.3d 1157 (9th Cir. 2008) (applying Section 230 to claim under the Fair Housing Act, 42 U.S.C. § 3601 *et seq*.). The Court does not address that aspect of the CDA because no federal law claims are alleged in this suit.

the immunity as "quite robust." *Carafano v. Metrosplash.com, Inc.*, 339 F.3d 1119, 1123 (9th Cir. 2003). Moreover, district courts within the Ninth Circuit have held that the immunity extends to *all* claims stemming from an interactive computer service provider's publication of content created by third parties. *See, e.g., Evans v. Hewlett-Packard Co.*, No. C 13-02477 WHA, 2013 WL 4426359, at *2 (N.D. Cal. Aug. 15, 2013) ("[T]he CDA safe harbor protects internet *service providers* from being sued based on material published by *content providers*."); *Goddard v. Google, Inc.*, No. C 08-2738 JF (PVT), 2008 WL 5245490, at *2 (N.D. Cal. Dec. 17, 2008) ("[P]arties complaining that they were harmed by a Web site's publication of user-generated content . . . may sue the third-party user who generated the content, but not the interactive computer service that enabled them to publish the content online." (quotation marks and citation omitted)).

"This grant of immunity applies only if the interactive computer service provider is not also an 'information content provider,' which is defined as someone who is 'responsible, in whole or in part, for the creation or development of' the offending content. *Fair Hous. Council of San Fernando Valley v. Roommates.Com, LLC*, 521 F.3d 1157, 1162 (9th Cir. 2008) (quoting § 230(f)(3)). "A website operator can be both a service provider and a content provider." *Id*. "If it passively displays content that is created entirely by third parties, then it is only a service provider with respect to that content." *Id*. "But as to content that it creates itself, or is responsible, in whole or in part for creating or developing, the website is also a content provider." *Id*. (quotation marks omitted). "Thus, a website may be immune from liability for some of the content it displays to the public but be subject to liability for other content." *Id*.

In *Barnes*, the Ninth Circuit created a three-prong test for Section 230 immunity. *See Dyroff v. Ultimate Software Grp., Inc.*, 934 F.3d 1093, 1097 (9th Cir. 2019) (discussing *Barnes* test). "Immunity from liability exists for '(1) a provider or user of an interactive computer service (2) whom a plaintiff seeks to treat, under a state law cause of action, as a publisher or speaker (3) of information provided by another information content provider.'" *Id*. (quoting *Barnes*, 570 F.3d at 1100-01). "When a plaintiff cannot allege enough facts to overcome Section 230 immunity, a plaintiff's claims should be dismissed." *Id*.

### 2.    Application of Section 230 to Facts Alleged in this Case

Google argues that it appears on the face of the complaint that this test is satisfied. As Plaintiffs' claims are presently framed, the Court agrees.

#### a.    Interactive Computer Service Provider

Under the first prong of the *Barnes* test, the Court must determine whether Plaintiffs' allegations establish that Google is an interactive computer service provider. "The term 'interactive computer service' means any information service, system, or access software provider that provides or enables computer access by multiple users to a computer server, including specifically a service or system that provides access to the Internet and such systems operated or services offered by libraries or educational institutions." 47 U.S.C. § 230(f)(2). "Websites are the most common interactive computer services." *Dyroff*, 934 F.3d at 1097; *see also Roommates.com*, 521 F.3d at 1162 n.6 ("[t]oday, the most common interactive computer services are websites"). Courts "interpret the term 'interactive computer service' expansively." *Dyroff*, 934 F.3d at 1097.

Plaintiffs allege that "Google creates and maintains a virtual online 'store' where it makes available to consumers various software applications ('Apps') that are generally . . . created by other developers." Compl. ¶ 23. These allegations are sufficient to satisfy the first prong of the *Barnes* test. Plaintiffs do not dispute Google's status as an interactive computer service provider as that term is used in Section 230.

#### b.    Seek to Treat as a Publisher or Speaker

Under the second prong of the test, the Court must determine whether Plaintiffs' allegations show that Plaintiffs seek to treat Google as a publisher or speaker with respect to content on the Google Play store. In *Barnes*, the Ninth Circuit addressed "how to determine when, for purposes of this statute, a plaintiff's theory of liability would treat a defendant as a publisher or speaker of third-party content." *Barnes*, 570 F.3d at 1101. While acknowledging that defamation is the most common claim to be discussed in Section 230 cases, the Ninth Circuit made clear that "many causes of action might be premised on the publication or speaking of what one might call 'information content.'" *Id.* Examples include claims for discrimination against an operator of an online roommate-matching website; for negligence and fraud against the operator of a social

United States District Court
Northern District of California

network; for false light against the First Lady and campaign aids; and for negligent publication of advertisements that cause harm to third parties. *See id.* (collecting cases). "[W]hat matters is whether the cause of action inherently requires the court to treat the defendant as the 'publisher or speaker' of content provided by another." *Id.* at 1102.

For purposes of the CDA, a "publisher" may be defined as "'the reproducer of a work intended for public consumption' and also as 'one whose business is publication.'" *Barnes*, 570 F.3d at 1102 (quoting Webster's Third New International Dictionary 1837 (Philip Babcock Gove ed., 1986)). Publication includes "any activity that can be boiled down to deciding whether to exclude material that third parties seek to post online." *Roommates*, 521 F.3d at 1170-71. Here, all of Plaintiffs' claims are grounded in video game apps intended for public consumption that Google chooses to place "on the virtual shelves of its Google Play store." Compl. ¶ 27. Plaintiffs seek to impose liability on Google for the content of those apps that contain Loot Boxes. *See* Compl. ¶¶ 115-118 (UCL); 124-128 (CLRA); 137-138 (unjust enrichment). Part of the relief sought is an order enjoining Google "from continuing the unlawful practices." Compl. Prayer. It is unclear exactly what Plaintiffs seek by this request, but presumably they seek an order requiring Google to screen apps offered through its Google Play store and exclude those containing Loot Boxes – conduct that is squarely within the role of a publisher under *Roommates*. Accordingly, it appears from the face of the complaint that Plaintiffs seek to treat Google as the publisher of the video game apps in question.

At the hearing, Plaintiffs' counsel argued that Section 230 offers protection only to publishers of "speech," and that because the content published in this case is video game apps, the statute does not apply. Counsel did not cite any authority to support that argument, and at least one court in this district has applied Section 230 where the published content was an app. In *Evans*, the plaintiff's claims arose from "The Chubby Checker" app, which was offered for sale and download from a web-based store operated by the defendants, Hewlett-Packard Company and one of its subsidiaries (collectively, "HP"). *See Evans*, 2013 WL 5594717, at *1. The app "purport[ed] to estimate the size of a man's genitals based on his shoe size." *Id.* The plaintiff, a well-known musician who performed under the stage name Chubby Checker, sued HP for

trademark infringement, unfair competition, and related claims. *Id.* The district court found the plaintiff's state law claims to be barred by Section 230, noting that a third party "provided the published content" and HP engaged only in "editorial conduct within the duties of service providers." *Id.* at *4. This Court likewise concludes that Section 230 may apply when the published content is an app.

Plaintiffs also argue that they do not seek to treat Google as a publisher of another's content, but rather "seek to hold Google accountable for permitting and facilitating illegal gambling." Opp. at 5, ECF 28. Plaintiffs cite *Barnes* for the proposition that Section 230 does not insulate interactive computer service providers from liability for their own wrongful conduct that goes beyond merely publishing another's content. In *Barnes*, the plaintiff's ex-boyfriend posted profiles about her on a website operated by the defendant, Yahoo!, Inc. ("Yahoo"). *See Barnes*, 570 F.3d at 1098. The profiles included nude photographs of the plaintiff, solicitations to engage in sexual intercourse purporting to be from the plaintiff, and contact information for the plaintiff. *See id.* The plaintiff was subjected to undesirable advances from unknown men over a period of months, during which she asked Yahoo several to remove the unauthorized profiles, to no avail. *Id.* Finally, when a news program prepared a broadcast about the story, a representative of Yahoo contacted the plaintiff and assured her the matter would be taken care of. *Id.* at 1099. The plaintiff claimed that she relied on that assurance and took no further action while she waited for Yahoo to remove the profiles. *Id.* After months without word or action from Yahoo, the plaintiff sued Yahoo for negligence and promissory estoppel, and at that point the profiles were removed. *Id.*

The district court dismissed the suit after concluding that the CDA rendered Yahoo! immune from liability for content posted by the plaintiff's ex-boyfriend. *Barnes*, 570 F.3d at 1099. On appeal, the Ninth Circuit held that the plaintiff's claim for negligent provision of services fell within the scope of the immunity afforded to Yahoo under Section 230, but her claim for promissory estoppel did not. *See id.* at 1105-06, 1109. The Ninth Circuit held that while the negligence claim sought to hold Yahoo liable for ordinary conduct of a publisher, liability on the promissory estoppel claim "would come not from Yahoo's publishing conduct, but from Yahoo's

11

1   manifest intention to be legally obligated to do something, which happens to be removal of

2   material from publication." *Id.* at 1107.

3        In the present case, Plaintiffs do not allege that Google made them a promise akin to the

4   one made by Yahoo in *Barnes*. Nor do Plaintiffs allege any other conduct by Google showing its

5   "manifest intention to be legally obligated to do something" for Plaintiffs. While Plaintiffs argue

6   that they seek to hold Google liable for its own conduct in "permitting and facilitating illegal

7   gambling," it is unclear from the complaint what conduct that might be. Neither the word

8   "permitting" nor the word "facilitating" appears in the complaint. Plaintiffs argue that Google is

9   acting as an unlicensed "casino" by offering video games containing Loot Boxes and converting

10   real money to virtual game currency that is used like poker chips during game play. However,

11   while the opposition brief compares Google to a casino more than a dozen times, the complaint

12   uses the word "casino" only once, in a footnote, and not in reference to Google.

13        The Court concludes that, as currently framed, the complaint does not allege claims based

14   on conduct that goes beyond Google's role as a publisher of third party content. The second prong

15   of the *Barnes* test therefore is satisfied.

16                    **c.        Information Provided by Another Content Provider**

17        Under the third prong of the *Barnes* test, the Court must determine whether Plaintiffs'

18   allegations show that the published material – the video game apps containing Loot Boxes – was

19   provided by another content provider. Plaintiffs allege expressly that "Google does not itself

20   create these games and the Loot Box mechanism." Compl. ¶ 13. The two apps downloaded by

21   Plaintiffs, Final Fantasy and Dragon Ball Z, were created by third party developers and were

22   downloaded by Plaintiffs for free. Compl. ¶¶ 13, 66, 72. These allegations are sufficient to satisfy

23   the test's third prong.

24        Plaintiffs contend that this prong is not met because Google is a co-developer of the video

25   game apps. As discussed above, "[a] website operator can be both a service provider and a

26   content provider." *Roommates*, 521 F.3d at 1162. A website operator is immune only with

27   respect to content created entirely by third parties. *See id.* However, a website operator is not

28   entitled to immunity as to content "that it creates itself, or is responsible, in whole or in part for

creating or developing." *Id.* (quotation marks omitted). The Ninth Circuit clarified this distinction in *Roommates*, as follows: "We believe that both the immunity for passive conduits and the exception for co-developers must be given their proper scope and, to that end, we interpret the term 'development' as referring not merely to augmenting the content generally, but to materially contributing to its alleged unlawfulness." *Id.* at 1167-68. "In other words, a website helps to develop unlawful content, and thus falls within the exception to section 230, *if it contributes materially to the alleged illegality of the conduct*." *Id.* at 1168 (emphasis added).

Plaintiffs argue that the following conduct of Google contributes materially to the alleged illegality of video games containing Loot Boxes. First, Plaintiffs allege that Google requires app developers "to disclose the 'odds of winning' particular items in the Loot Boxes for the games it distributes." Compl. ¶ 12. Plaintiffs do not explain how disclosure of odds contributes to the alleged illegality of Loot Boxes, and the Court is at a loss to understand how Google's conduct in requiring such disclosure contributes to the alleged illegality. Plaintiffs also allege that Google provides "ESRB-based age-ratings for games in its Google Play store." Compl. ¶ 94. Plaintiffs explain that "[i]n the United States, the videogame industry 'self-regulates' through the Entertainment Software Ratings Board ('ESRB')." Compl. ¶ 93. "According to the ESRB's website, ESRB ratings provide information about what's in a game or app so parents and consumers can make informed choices about which games are right for their family." *Id.* "Ratings have 3 parts: Rating Categories, Content Descriptors, and Interactive Elements." *Id.* Plaintiffs do not explain how providing industry-standard app ratings contributes materially to the illegality of Loot Boxes. Finally, Plaintiffs allege that while Google discloses that games allow in-app purchases, "there is no notice – and no requirement of any notice by Google – to the parent or the child that a game contains Loot Boxes or other gambling mechanisms." Compl. ¶ 95. Plaintiffs cite no authority for the proposition that omission of information can constitute "development" of content.

The Court finds that Plaintiffs have failed to allege conduct that would render Google a content provider with respect to video game apps containing Loot Boxes. Because it appears that the content was developed solely by third parties, the third prong of the *Barnes* test is satisfied.

13

United States District Court
Northern District of California

#### d.  Conclusion

Under the facts as currently pled, the Court concludes that Google is entitled to CDA immunity as to all of Plaintiffs' claims.  Even if the Court were to find that Loot Boxes constitute illegal slot machines or devices under California's gambling laws, and that Google knew as much, the immunity applies because Plaintiffs have alleged no more than Google's "passive acquiescence in the misconduct of its users."  *Roommates*, 521 F.3d at 1169 n.24.  Google cannot be held liable for merely allowing video game developers to provide apps to users through the Google Play store, as "providing third parties with neutral tools to create web content is considered to be squarely within the protections of § 230."  *Goddard*, 2008 WL 5245490, at *3.  "Moreover, even if a service provider knows that third parties are using such tools to create illegal content, the service's provider's failure to intervene is immunized."  *Id.*  The Ninth Circuit emphasized the importance of these safeguards for websites in *Roommates*, stating that "close cases, we believe, must be resolved in favor of immunity, lest we cut the heart out of section 230 by forcing websites to face death by ten thousand duck-bites, fighting off claims that they promoted or encouraged – or at least tacitly assented to – the illegality of third parties."  *Roommates*, 521 F.3d at 1174.

It is possible that Plaintiffs could amend their claims to show that Google's conduct goes beyond the mere publishing of third party content.  Plaintiffs make reference to "Google's predatory Loot Box scheme" in their complaint.  Compl. ¶¶ 14, 18.  Plaintiffs may be able to allege more facts to support that characterization of Google's conduct.  Moreover, at the hearing, Plaintiffs' counsel made a passing suggestion that Plaintiffs' claims find support in the Ninth Circuit's decision in *HomeAway.com, Inc. v. City of Santa Monica*, 918 F.3d 676, 681 (9th Cir. 2019).  Counsel did not elaborate on that argument, and Plaintiffs' opposition brief devotes only a single sentence to *HomeAway*, stating that "Airbnb was not immune under § 230 for allowing its website to facilitate unlicensed booking transactions."  Opp. at 6, ECF 28.  As discussed above, the complaint does not explain with sufficient specificity how Google facilitates unlicensed gambling.  Accordingly, while the Court finds that the complaint as currently framed gives rise to CDA immunity, the Court will grant leave to amend.

14

Accordingly, all claims of the complaint are DISMISSED WITH LEAVE TO AMEND.

**C.      Elements of Claims**

As a separate basis for dismissal, Google argues that Plaintiffs have not alleged the essential elements of their claims.  Plaintiffs assert that their claims are adequately alleged.

**1.      Claim 1 – UCL**

Claim 1 alleges violation of California's UCL, which in relevant part prohibits an individual or entity from engaging in any "unlawful, unfair or fraudulent business act or practice." Cal. Bus. & Prof. Code § 17200.  "Because the statute is written in the disjunctive, it is violated where a defendant's act or practice violates any of the foregoing prongs." *Davis v. HSBC Bank Nevada, N.A.*, 691 F.3d 1152, 1168 (9th Cir. 2012).  A private person has statutory standing under the UCL only if he or she "has suffered injury in fact and has lost money or property as a result of the unfair competition." Cal. Bus. & Prof. Code § 17204; s*ee also Hawkins v. Kroger Co.*, 906 F.3d 763, 768 (9th Cir. 2018).  "A plaintiff is required to show some form of economic injury as a result of his transactions with the defendant." *Hawkins*, 906 F.3d at 768.

Plaintiffs assert UCL claims under the unlawful and unfair prongs of § 17200.  "By proscribing any unlawful business practice, section 17200 borrows violations of other laws and treats them as unlawful practices that the unfair competition law makes independently actionable." *Chabner v. United of Omaha Life Ins. Co.*, 225 F.3d 1042, 1048 (9th Cir. 2000) (internal quotation marks and citation omitted).  Plaintiffs' claim under the unlawful prong is based on Google's alleged violation of state and federal gambling laws.  *See* Compl. ¶ 115.  Plaintiffs' claim under the unfair prong is based on the same alleged violations of law and related state legislative policies.  *See* Compl. ¶¶ 116-17.

Google challenges Plaintiffs' UCL claim on several grounds.  First, Google argues that Plaintiffs Montanez and S.M. lack standing to bring suit under the UCL because they are New York residents and they do not allege injuries occurring in California.  Second, Google argues that Plaintiffs lack statutory standing because they no not allege economic injury or causation, which are essential elements of a UCL claim.  Third, Google argues that Plaintiffs do not allege any unlawful or unfair act or practice because Loot Boxes do not constitute illegal gambling.

United States District Court
Northern District of California

Google's first and third arguments are disposed of easily.  As Plaintiffs point out, the Google Terms of Service provide that "California law will govern all disputes arising out of or relating to these terms, service-specific additional terms, or any related services, regardless of conflict of laws rules," and that "[t]hese disputes will be resolved exclusively in the federal or state courts of Santa Clara County, California, USA."  Blood Decl. Exh. A (Google Terms of Service) at 12, ECF 28-2.  Under these provisions, it appears that Plaintiffs Montanez and S.M. may assert a UCL claim in this case.  Google abandons its residency-based standing argument in its reply brief.  With respect to Google's argument that Loot Boxes do not constitute illegal gambling, the Court defers that issue to a later stage of the proceedings for the reasons discussed above.  Accordingly, the Court declines to dismiss the UCL claim on either of these grounds.

Google's second argument is meritorious, however, as the complaint does not allege facts showing economic injury or causation, both of which are required for statutory standing. Plaintiffs assert that the economic injury requirement is met by allegations that "Plaintiff Coffee estimates he has spent in excess of $500 on in-game Loot Boxes in exchange for the random-chance possibility of winning valuable items," and "Mei-Ling Montanez estimates S.M. has spent more than $100 on in-game purchases including Loot Boxes."  Compl. ¶¶ 14, 18.  However, when the complaint is read as a whole, what Plaintiffs actually allege are two-part transactions in which Coffee and S.M. first purchased virtual currency for $500 (Coffee) and $100 (S.M.), and then "spent" virtual currency to acquire Loot Boxes.  *See* Compl. ¶¶ 67 (alleging that in Final Fantasy a summons must be purchased with virtual currency called Lapis Crystals), 73 (alleging that in Dragon Ball Z "Summons can only be purchased with the in-game currency, called 'dragon stones'").

While not entirely clear from the complaint, it appears that Google was involved only in the first part of Plaintiffs' transactions, that is, Plaintiffs' purchases of virtual currency.  Although Plaintiffs do not specifically allege that they bought virtual currency from Google, their purchases of virtual currency from Google reasonably may be inferred from Plaintiffs' allegations that all in-game purchases are made through Google Play's payment system.  *See* Compl. ¶ 28.  However, Plaintiffs do not explain how their purchases of virtual currency resulted in economic loss.  For

United States District Court
Northern District of California

1    example, Plaintiffs do not allege that they received fewer Lapis Crystals (Final Fantasy) or dragon

2    stones (Dragon Ball Z) than the amount for which they paid.  *See Lozano v. AT & T Wireless*

3    *Servs., Inc.*, 504 F.3d 718, 734 (9th Cir. 2007) (plaintiff established economic injury under the

4    UCL where he did not receive the full number of agreed-upon minutes he purchased in a wireless

5    agreement).  Nor do Plaintiffs allege that Google made misrepresentations regarding the virtual

6    currency, or "that they were deprived of an agreed-upon benefit in purchasing" the virtual

7    currency.  *Birdsong v. Apple, Inc.*, 590 F.3d 955, 961 (9th Cir. 2009) (plaintiffs failed to establish

8    economic injury in suit against Apple for alleged defect in iPods where plaintiffs alleged neither

9    that Apple made any misrepresentations about the iPod nor that they were deprived of an agreed-

10    upon benefit in purchasing their iPods).  "If one gets the benefit of his bargain, he has no standing

11    under the UCL."  *Johnson v. Mitsubishi Digital Elecs. Am., Inc.*, 365 F. App'x 830, 832 (9th Cir.

12    2010).

13        Plaintiffs' reliance on cases involving fraud-based UCL claims is misplaced.  In *Hansen*,

14    the plaintiffs alleged that an internet electronics retailer advertised fictitious former price and

15    discount information.  *See Hansen v. Newegg.com Americas, Inc.*, 25 Cal. App. 5th 714, 731

16    (2018).  The state appellate court rejected the defendant's argument that "a consumer who pays the

17    specified price for a product and receives that product has obtained the benefit of the bargain and

18    cannot therefore show an economic injury – absent specific allegations such as the product was

19    different than it was represented to be, unsatisfactory in some manner, or worth less than the

20    amount paid."  *Id.* (quotation marks and citation omitted).  The court held that "the 'benefit of the

21    bargain' theory has no relevance when the misrepresentation underlying the UCL claim is material

22    in nature."  *Id.*  For purposes of a UCL claim based on false advertising, "a consumer need only

23    allege that he or she relied on a misrepresentation when purchasing the product, and that he or she

24    would not have purchased the product but for the representation."  *Id.* at 733.  In the present case,

25    Plaintiffs do not assert a claim under the UCL's fraud prong, and they do not allege that Google

26    engaged in false advertising regarding the purchase of virtual currency or, indeed, that Google

27    made any representations upon which Plaintiffs relied.  *Hansen* and other cases addressing fraud-

28    based UCL claim therefore are inapposite.  *See, e.g., Hinojos v. Kohl's Corp.*, 718 F.3d 1098,

1107 (9th Cir. 2013), *as amended on denial of reh'g and reh'g en banc* (July 8, 2013) (finding that "the district court's determination that Hinojos has suffered no economic injury because he received the 'benefit of the bargain' is contrary to *Kwikset* because Hinojos alleges that Kohl's made material misrepresentations that induced him to buy products he would not otherwise have purchased").

To the extent the second part of the transactions, Plaintiffs' in-game purchases of Loot Boxes using virtual currency, resulted in economic injury, Plaintiffs do not allege facts showing that such injury is attributable to Google. As far as the Court can tell, the in-app purchase of a Loot Box is a transaction between the player and the app developer, in which Google is not involved. Plaintiffs argue that Google may be held liable for the in-app purchase of Loot Boxes based on their allegations that "as a result of Defendant's conduct" they "were induced to spend money" on Loot Boxes. Compl. ¶¶ 14-18, 130. Those allegations are conclusory and therefore are insufficient to allege economic loss resulting from Google's conduct. As discussed above, Plaintiffs argue throughout their opposition brief that Google may be held liable for in-app purchases of Loot Boxes based on the theory that Google acts as an unlicensed "casino" that "facilitates" illegal gambling via Loot Boxes by converting real money to virtual game currency that is used like poker chips during game play. However, that theory is not alleged in the complaint, which uses neither the words "casino" nor "facilitates" in reference to Google.

Moreover, as Google points out, Plaintiffs' casino analogy does not address the fact that virtual currency may be used to make in-app purchases other than Loot Boxes. The complaint indicates that virtual currency may be used to acquire "various products" in video games, Compl. ¶ 59 (discussing virtual currency in the game Roblox), and that S.M. used the virtual currency he purchased for use in Dragon Ball Z on "in-game purchases *including* Loot Boxes," Compl. ¶ 18 (emphasis added). Google asserts that in many games, players may use virtual currency for direct purchase of Loot Box items, *e.g.*, 500 rubies for a battle-axe or 200 gems for a dwarf warrior. *See* Mot. at 5, ECF 17. While the latter assertion is outside the scope of Plaintiffs' complaint, Plaintiffs do not dispute that virtual currency may be used for in-app purchases wholly unrelated to the alleged illegal gambling via Loot Boxes. In order to make out a plausible claim for unfair

18

competition against Google based on its role in converting real money into virtual currency, Plaintiffs must address the fact that players can choose to "spend" virtual currency on a variety of game items other than Loot Boxes, and that Google does not appear to have any role in those choices.

Google's motion to dismiss Claim 1 for failure to state a claim is GRANTED WITH LEAVE TO AMEND.

### 2.    Claim 2 – CLRA

Claim 2 alleges a violation of the CLRA, which makes unlawful "unfair methods of competition and unfair or deceptive acts or practices undertaken by any person in a transaction intended to result or which results in the sale or lease of goods or services to any consumer."  Cal. Civ. Code § 1770(a); *see also Meyer v. Sprint Spectrum L.P.*, 45 Cal. 4th 634, 639 (2009).  "Any consumer who suffers any damage as a result of the use or employment by any person of a method, act, or practice declared to be unlawful" under the CLRA may bring suit.  Cal. Civ. Code § 1780(a).  Thus, "in order to bring a CLRA action, not only must a consumer be exposed to an unlawful practice, but some kind of damage must result."  *Meyer*, 45 Cal. 4th at 641.

Plaintiffs allege that "Defendant violated the CLRA by representing to Plaintiffs and Class members transactions involving Loot Boxes confer or involve rights to potentially valuable prizes, when in fact these transactions constitute unlawful gambling transactions that are prohibited by law."  Compl. ¶ 128.  Plaintiffs further allege that "Defendant's violations of the CLRA proximately caused injury in fact to Plaintiffs and the Class."  Compl. ¶ 129.  Google asserts that these allegations fail to state a claim for several reasons.  First, Google argues that Plaintiffs Montanez and S.M. lack standing to bring suit under the CLRA because they are New York residents and they do not allege injuries occurring in California.  Second, Google argues that virtual currency is neither a good nor a service under the CLRA.  Third, Google asserts that the Complaint does not identify any representations by Google regarding Loot Boxes.  Fourth, Google argues that Loot Boxes do not qualify as illegal slot machines under California gambling laws.

Google's first and fourth arguments do not constitute grounds for dismissal for the reasons discussed above in connection with Plaintiffs' UCL claim.  However, its second and third

United States District Court
Northern District of California

1    arguments are meritorious.  It appears from the complaint that the only transactions between

2    Plaintiffs and Google were the free downloads of the games Final Fantasy and Dragon Ball Z, and

3    purchases of virtual currency through the Google Play store.  Plaintiffs do not allege that the free

4    download of video games qualifies as "the sale or lease of goods or services" under the CLRA.

5    Moreover, courts in this district have held that virtual currency is not a good or service for

6    purposes of the CLRA.  *See, e.g, Doe v. Epic Games, Inc.*, 435 F. Supp. 3d 1024, 1046 (N.D. Cal.

7    2020) (" Plaintiff's CLRA claim therefore fails because the virtual currency at issue is not a good

8    or service."); *I.B. ex rel. Fife v. Facebook, Inc.*, 905 F. Supp. 2d 989, 1008 (N.D. Cal. 2012)

9    (holding that Facebook Credits, a virtual currency, are not covered by the CLRA).  Plaintiffs argue

10   that the "services" provided by Google are akin to those offered by a casino, and must be viewed

11   in that broader context.  However, even assuming for purposes of this motion that Loot Boxes

12   themselves constitute illegal gambling, Plaintiffs have not alleged facts to support their casino

13   theory of liability under the CLRA.  Moreover, Plaintiffs have failed to identify any

14   misrepresentations, or indeed any representations at all, made by Google about Loot Boxes.

15       Google's motion to dismiss Claim 2 for failure to state a claim is GRANTED WITH

16   LEAVE TO AMEND.

17                    **3.       Claim 3 – Unjust Enrichment**

18       Claim 3 is a claim for unjust enrichment under unspecified state law.  Plaintiffs allege that

19   "Google was unjustly enriched as a result of the compensation it received from marketing and

20   selling the unlawful and unfair Loot Boxes to Plaintiffs and the Class."  Compl. ¶ 137.  Plaintiffs

21   "seek restitution from Google and seek an order of this Court disgorging all profits, benefits, and

22   other compensation obtained by Google from its wrongful conduct."  Compl. ¶ 138.  Google

23   argues that these allegations fail to state a claim for relief because Plaintiffs do not specify which

24   state's law applies, Plaintiffs cannot maintain an unjust enrichment claim under California law,

25   and the unjust enrichment claim is duplicative of their UCL and CLRA claims.

26       The Court agrees with Google that Plaintiffs cannot proceed on an unjust enrichment

27   theory without specifying which state's law they seek to apply. *See In re Nexus 6P Prod. Liab.*

28   *Litig.*, 293 F. Supp. 3d 888, 933 (N.D. Cal. 2018) ("As this Court and other courts in this district

have recognized, due to variances among state laws, failure to allege which state law governs a common law claim is grounds for dismissal." (quotation marks and citation omitted)); *In re TFT-LCD (Flat Panel) Antitrust Litig.*, 781 F. Supp. 2d 955, 966 (N.D. Cal. 2011) ("Dell must specify the state laws under which it is asserting claims for unjust enrichment.").  Having made this determination, the Court need not reach Google's additional arguments regarding Plaintiffs' unjust enrichment claim.

Google's motion to dismiss Claim 3 for failure to state a claim is GRANTED WITH LEAVE TO AMEND.

## IV.   ORDER

(1)   Google's motion to dismiss is GRANTED WITH LEAVE TO AMEND.

(2)   Any amended complaint shall be filed on or before March 12, 2021.

(3)   Leave to amend is limited to the claims alleged in the complaint; Plaintiffs may not add new claims or parties without obtaining leave of the Court.

(4)   This order terminates ECF 17.

Dated:  February 10, 2021

_____
BETH LABSON FREEMAN
United States District Judge

# Exhibit A

DENTONS US LLP
1999 HARRISON STREET, SUITE 1300
OAKLAND, CALIFORNIA 94612
(415) 882-5000

## STATEMENT OF RECENT DECISION

Pursuant to Civil Local Rule 7-3(d)(2), Defendant respectfully submits the following Statement of Recent Decision in support of its pending Motion to Dismiss (the "Motion").  ECF 24.

On February 10, 2021, the Honorable Beth Labson Freeman of the Northern District of California issued a decision captioned *Coffee, et al. v. Google, LLC*, No. 5:20-cv-03901-BLF, in which the court GRANTED defendant Google's motion to dismiss the complaint with leave to amend.  This judicial opinion was published after the Motion was fully briefed and argued by counsel, and a true and correct copy is attached hereto as **Exhibit A**.

Dated:  February 11, 2021

Respectfully submitted,

DENTONS US LLP


By: /s/ Laura Geist
       Laura Leigh Geist

Attorneys for Defendant
APPLE INC.